THELMA HERMILLA, APPELLEE, v. EVERETT E. PETERSON, APPELLANT.

106 N. W. 2d 507

Filed December 9, 1960. No. 34793.

*Healey, Wilson & Barlow,* for appellant.

*Ginsburg, Rosenberg & Ginsburg* and *Norman Krivosha,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

There was a collision at about 3 o'clock on the afternoon of March 2, 1958, at the intersection of South and Twenty-fourth Streets in Lincoln, of two automobiles, one driven by Noble Leroy Hohl, hereafter called Hohl, and the other by appellant. The former was traveling west on South Street and was making a left turn to go south on Twenty-fourth Street. Appellant was at the same time operating his automobile towards the west on South Street and in attempting to pass the automobile of Hohl, collided with the left side of it because it was turned left into the path of the automobile of appellant. Appellee, an employee of Hohl and his wife in their nursing home operations, occupied the right side of the front seat of the Hohl automobile at the time of the collision. In this action for the recovery of damages she claims to have sustained because of the collision of the automobiles, she alleged she suffered a sprained back which caused her constant pain in her neck and lower back region; that thereby she became emotionally disturbed and suffered from headaches, nervousness, loss of sleep, weakness, and pain; that her condition would continue for an indefinite time in the future; that appellee sustained permanent impairments to the physical structure of her body in that the nerves and soft tissue

of the neck and back were damaged and irritated and thereby she had permanent impairment and loss of her bodily strength and functions; and that the injury and damage suffered by appellee were the direct result of the negligence of appellant.

The substance of the defense of appellant was a denial of the claims of appellee, an assertion of ordinance provisions of the city of Lincoln, and a plea of contributory negligence more than slight of appellee. A trial of the issues resulted in a verdict in favor of appellee and the rendition of a judgment in accordance with the verdict. The motion of appellant for a new trial was denied and this appeal is from that action of the trial court.

The substance of the assignments of appellant in this court is that the trial court committed error in submitting to the jury the issues of damages for permanent injury and future pain and suffering because there was no evidence that permanent injury or future pain and suffering were reasonably certain as a proximate result of the accident, and that the verdict of the jury was excessive.

Appellant at the close of all the evidence by motions asked the trial court to withdraw from the consideration of the jury the issue of permanent injury because of the absence of proof that a permanent injury to appellee was caused by the collision and to withdraw from the consideration of the jury the issue of future pain and suffering because it was not sustained by proof. The motions were denied and these issues were submitted by the trial court to the jury for its consideration. The verdict is substantial and it cannot be assumed or known that the amount thereof was not the result of a finding of permanent injury to and future pain and suffering by appellee.

The place of the collision was described as 5 feet east and 9 feet south of the center of the intersection. The width of the intersection from east to west was

25 feet. There were tire skid marks 15 feet long made by the automobile of appellant extending east from the place of the collision. At that time the speed of the automobile of appellant was not more than 15 miles per hour. The automobiles were each facing in a westerly direction at the time of the collision. The Hohl automobile had not completed the right angle turn into Twenty-fourth Street and appellant had turned his automobile to the left in an attempt to avoid an accident. The impact was a glancing or oblique blow and not a broadside contact of the automobiles. The right end of the front bumper and the front end of the right fender of the automobile of appellant contacted the left side of the Hohl automobile and made a considerable dent in the left door. The right headlight of the automobile of appellant was not injured. It was serviceable after the collision and needed no repair. Each of the automobiles was driven from the scene of the accident and was continued in use.

Appellant at the time of the impact experienced no jolt, bumps, or shock. His hands remained on the steering wheel and his foot continued on the brake pedal. His wife and their young son were in the front seat with appellant. They or any of them were not forced out of the normal position in the seat. There was no injury or soreness experienced by any of them because of the collision. Hohl was driving his automobile and at the time of the collision his hands were not forced off the steering wheel or his foot off the brake pedal nor was he thrown against the steering wheel.

Appellee was seated to the right of Hohl in the front seat and he did not see her position change before or at the time of the impact. Appellee testified that at the time of the collision she was sitting on the seat of the automobile and "scooted down in my seat. * * * I mean I just scooted back." She said she was not entirely knocked out of the seat. She was still sitting in it and

then she scooted back. She was not thrown against the body of the automobile. She was asked if she had any aches or pains soon after the accident and she said she could not remember any. She got out of the automobile at once after the collision and she and Hohl remained at the place of the accident for about an hour and then they got in the Hohl automobile and went to his home. Hohl said appellee while they were at the place of the accident acted normally and she made no complaint on the trip from there to the Hohl home. She told Hohl that evening she was not injured.

A police officer was at the place of the accident a few minutes after it happened. He said he made an investigation to ascertain if anyone was injured and that the persons there told him they were not injured. He said appellee did not appear unusual in any way.

Appellee said she was nauseated twice after the accident, the first time in the restroom of a filling station which she could not locate and the other time in the bathroom of the Hohl home. She was at the Hohl home about half an hour after she reached there from the place of the accident and she then accompanied Mrs. Ruth Hohl on an automobile trip to College View and back to the Hohl home. Appellee did not complain of injury or illness during that trip nor did she exhibit any symptoms of any such condition. She remained at the Hohl home until she left to engage in the duties of her employment. She worked from 11 p. m., March 2, 1958, to 7 a. m., March 3, 1958, the usual hours of her employment at the nursing home. That night she said she noticed a pain in her back and her neck was stiff. She worked the night shift at the nursing home the month of March 1958 a total of 250⅔ hours. Appellee left on a trip to Ozark, Missouri, by bus on March 3, 1958. The continuous time required to make the trip was about 18 hours. She had not sought or had medical attention since the accident until she left on that trip. She spoke of Dr. Roper of Ozark, Missouri, as her family

doctor, but she did not consult him when she reached that city. She returned to Lincoln by bus, making a continuous trip. She was away from Lincoln March 3, 4, and 5, 1958. She was not away from her employment any other time during that month. The night she returned, probably March 6, 1958, she performed the duties of her employment in the nursing home.

The first doctor appellee consulted after the accident was Dr. Norman of Lincoln on March 7, 1958. He was not a witness on the trial of the case but notes made by him and produced by an associate of his indicated that appellee told Dr. Norman of the accident, that she said she had pain over the lower spine, and that the left side of her neck was painful. She had no indication of pain down in the legs. There is no proof that Dr. Norman made any diagnosis of any condition of appellee but he did prescribe ultrasonic treatment to which she submitted. She continued doing the work at the nursing home after she saw Dr. Norman but with some difficulty. When she would bend over she said it was painful and it was difficult for her to straighten up. She said the pain in the small of her back was constant and the stiffness in her neck continued for about 3 weeks and it then improved.

Appellee consulted Dr. Ochs of Lincoln, an associate of Dr. Norman, on March 25, 1958, because of a cold and sore throat condition she had and not because of anything concerning the accident. A few days later she told Dr. Ochs of the accident. He testified that after he had seen her awhile and became familiar with her problems, "* * * I had my own feelings as to what her trouble was." He called it "a whiplash injury to the cervical spine." The treatment he prescribed was ultrasonic sound treatment, diathermy, manual massage, and a few arthritic-type medication tablets. He saw her several additional times until June 6, 1958, when he directed her to Dr. Getscher of Lincoln "Because we were not satisfied with the progress that was being

made with her complaints." Dr. Ochs saw appellee and gave her a couple of treatments after she had consulted Dr. Getscher of the same character he had given her before. Dr. Ochs last saw appellee June 20, 1958, about 11 months before the trial in which he testified.

The record made by Dr. Norman does not mention a finding of limited motion of the back of appellee, evidence of muscle spasm, or any bruise, contusion, or injury on the body of appellee. When Dr. Ochs saw appellee on March 25, 1958, he made no mention in his record of any injury she claimed to have suffered and no notation of any objective finding concerning an injury. There were X-rays taken while appellee was a patient of Dr. Ochs and they showed five or six of the vertebral bodies at the lower part of the spine which exhibited a perfectly normal lumbar spine without any disturbance with the alignment of the bodies of the bony structures thereof. They also showed the upper three lumbar vertebrae, which would be the first, second, third, and two below that, and the twelfth, eleventh, and part of the tenth thoracic vertebrae were a normal structure. Appellee on April 14, 1958, complained of a tenderness in the occipital area. Dr. Ochs believed in her case that this was the result of nervous tension rather than injury. The next day she felt relaxed but her back was still sore. There was not in the record made by Dr. Ochs any mention of appellee experiencing muscle spasms at any time or that the doctor found loss of motion in any part of the body of appellee. He found no evidence of a torn muscle or of a herniated disc in the neck or back of appellee.

Dr. Getscher, an orthopedic surgeon of Lincoln, testified he examined appellee and found she had full range of motion in the lumbosacral spine and in the joints of the lower extremities, and that all leg tests were considered to be normal. He found no evidence of muscle spasms. He resorted to other tests usual in the practice of an orthopedist and they disclosed no nerve or muscle

injury and nothing abnormal in the condition of appellee. There was no evidence of limited motion in the cervical spine or neck or a muscle spasm either in the lower back or in the neck. A neurological examination in both the upper and lower extremities was completely within normal limits, indicating the function of the nerves was normal. Dr. Getscher made a positive finding of moderate obesity and moderately poor posture of appellee. Poor posture and obesity create a problem of strain. Excessive weight on a spine that is intended to carry much less weight may very well lead to soreness of muscles and complaints of pain anywhere in the back, dependent upon the type of postural deficit and the degree of obesity. The doctor said appellee in his opinion had a problem so far as obesity and posture were concerned. Dr. Getscher found no evidence of loss of use of either of the arms or legs, of the spine, neck, low back, or in any area of the back of appellee. He said if a person sustains an injury which will eventually result in permanent damage, there would be an objective finding in the sense that a doctor could find some symptom, some disability, within 3 months of the occurrence of the accident. If there were a tearing or strain of a ligament, the healing would be by the production of scar tissue in the area of the injury and this would manifest itself so that it could be determined because scarring leads to the shortening of the muscle and would be demonstrated by range of motion or excursion of the muscle. Scarring in a ligament would likewise result in limited motion in the joints that it crossed. The fact that the examination demonstrated no limitation of motion indicates that there were no residuals evidencing that the tearing and straining of any ligament or muscle could be considered significant and probably result in permanent disability or restriction of activity.

Dr. Getscher was asked if it were possible for an individual to have sustained functional injury in that he

would experience pain and have certain limitations without there having been an organic injury. His answer was in substance that injury might be produced in an individual which results in functional loss but functions cannot be injured without injuring organic structure. Appellee demonstrated at the time of the examination witness made of her no evidence of injury in using the accepted method of examination. She did give subjective loss of functions based on subjective findings which might be the result of minor organic injury that did not show up in the type of examination that is considered necessary for the condition of this type or is considered the usual accepted procedure of examination. An individual who has a muscle that has been contused on March 2, 1958, may not demonstrate any objective findings in an examination on June 10, 1958, but still lead to complaints of pain by the individual, conditions within that muscle which are considered a normal result of an injury that far after an injury, and still provide no basis for accepting that a permanent disability will result. He said it was his opinion that appellee may be having discomfort as related by the so-called history she gave, that she may find certain duties aggravate this discomfort, and that the discomfort may be a real and distressing circumstance for her subjectively; but he said unless he could demonstrate to his satisfaction there had been significant injury which would reflect or show in an examination of the type commonly accepted among orthopedic surgeons in demonstrating post-injury conditions, he would be compelled to assume that the discomfort exists in an effort to improve her subjective condition but he would still have to reserve the right to testify that he was unable to demonstrate those significant changes that would necessarily form the basis for judging and concluding that disability is present or would result, leading to the conclusion that some minor injury cannot be adequately proven to exist at a time of examination, even though the examiner

accepts that injury and its ramifications may have existed prior thereto, and may still exist in a very minor way at the time of the examination. Dr. Getscher said he was of the opinion that the patient received strain to the neck and lower back and that she had a rather slow and incomplete recovery; that there were no objective findings of any significant organic injury at the time of the examination; that there was evidence that she was extremely disturbed emotionally; and it was thought she did have a delayed recovery complicated by moderate obesity and moderately poor posture.

Appellee consulted Dr. Roper of Ozark, Missouri, July 7, 1958. He said she told him of the accident of March 2, 1958, and that she had suffered with a pain in the lumbar region of her back since that date; that she then immediately became ill, was nauseated, and experienced pain in the lower back and in the left side of her neck; and that her back was severely twisted in the accident. Dr. Roper had a report from Dr. Ochs, including the information that X-rays of the lumbar spine and cervical spine showed that both locations were negative. Appellee told Dr. Roper that she had occasional headaches and she was nervous. Otherwise the systemic review was essentially normal. The result of a physical examination by Dr. Roper made of appellee was that she was essentially normal except she was obese and she was somewhat apprehensive. Her back and neck were normal and she had good range of motion. She said she had, and the doctor thought she had, moderate tenderness over the posterior spinous processes of lumbar vertebrae 2, 3, and 4 and a small amount laterally on the left side thereof. Her lower extremities were normal and the remaining part of the physical examination developed no abnormality in appellee. Dr. Roper testified he thought that probably she had a whiplash injury of the neck: "That's per Dr. Ochs, which responded to treatment." He was obviously referring to the report of Dr. Ochs which was

sent to Dr. Roper before appellee consulted him on July 7, 1958. Dr. Roper said concerning the supposed whiplash injury, "Oh, it's a neck injury, but that is apparently alleviated." Dr. Roper said that appellee told him when she first consulted him that the pain she suffered in her neck had been alleviated and that she had no more pain there. He said she made no complaint to him thereafter of pain in her neck. Dr. Roper prescribed diathermy and ultrasonic treatment for appellee which she accepted. Later she was treated with the Medco-Sonlator machine. There was some benefit from these treatments but she continued to complain of low back pain. On the advice of Dr. Roper appellee consulted Dr. Yancey, an orthopedic surgeon of Springfield, Missouri. In the report of Dr. Yancey to Dr. Roper of his examination of appellee he stated that he found the neck of appellee normal, no edema, no tenderness, no muscle spasm, vertebrae were in good normal alignment, no list, and normal range of motion. He put appellee on a reducing diet and recommended conservative treatment and more physiotherapy. Dr. Yancey reported to Dr. Roper that he did not believe appellee sustained a serious injury. Dr. Roper said that he found no evidence of muscle spasm, torn ligaments, or torn muscles in the back of appellee, no swelling, scar tissue, or tightness of muscles in any examination he made of appellee. Dr. Roper saw appellee at his office numerous times during the period from July 7, 1958, to and including April 22, 1959. When he last saw her she said that the pain she had was then intermittent, sometimes it was present and sometimes it was entirely absent. The conclusion of Dr. Roper was that he did not know at the time he was testifying how permanent the effects of any injury appellee sustained would be; that he did not know the permanency of disability of any injury she sustained; that he did not believe anyone could make that statement; and that he

did not know whether she would suffer pain in the future.

Dr. Carveth of Lincoln saw appellee May 18, 1959. Her complaints to the doctor were constant pain in the small of her back; intermittent pain in her neck but this condition was much improved; inability to sit for long periods; and some discomfort in the area below the skull on the left side of her neck, extending downward. Dr. Carveth gave appellee a complete physical examination. He found that her heart, blood pressure, lungs, breasts, eyes, ears, nose, and throat were all negative. Her reflexes were equally normal on both sides and this indicated that her spinal cord was normal. She claimed that when the doctor examined the small of her back by deep palpation, she had pain which extended lateralwards in that area for about 3 inches. The doctor subjected appellee to proper test to ascertain the condition of the muscles and ligaments in the small of her back. This demonstrated that she had good tone or strength and the absence of any weakness in that area. The strength of the small of the back of appellee was indicated by the absence of any reaction of the muscles, ligaments, and nerves relating thereto. She did not complain of pain occasioned by the test. The back of appellee was straight. She had normal curve and she bent laterally to the right and to the left. She was asked to bend over and touch the floor with her hands and she came within about a foot of it. There was no evidence of rigidity or spasms of the muscles of the back during this procedure and this demonstrated the absence of much disability in that area. She could turn her head and rotate it. There was no rigidity in the muscles of the neck or back. The doctor found there was no numbness or pain in her arms and no atrophy of the muscles and ligaments in the arms of appellee, and she stated to the doctor that this was true of her legs. The doctor found no swelling in her legs and she had normal range of motion of the legs. The pelvic

examination of appellee was negative. Laboratory examination showed blood count, both red and white, as normal and a normal sedimentation rate. There were X-rays taken and studied of the cervical spine, the area of the neck and back, and the low back area. There was no evidence in these of the effects of any injury to appellee. They were substantially normal. There was no indication of the presence of arthritis or pinching of the nerves. Any significant tearing or stretching of a ligament or muscle causes severe immediate pain to the subject and the injury can be determined upon examination because of resulting limitation of motion, spasm, and rigidity. Any significant injury of that kind to the low back would produce immediate pain and disability. Dr. Carveth said he found no evidence of any disability in appellee.

Appellee made a trip by bus from Lincoln to Ozark, Missouri, and return in April 1958 and in May 1958 and week-end trips to Kansas City, Missouri, the number or dates of which she could not state but all these were after the accident and before July 1, 1958. She could not testify how many hours she worked at the nursing home of Hohl in Lincoln during the period from March 2, 1958, the date of the accident, until June 29, 1958, the date she discontinued her services permanently at the nursing home. The evidence shows she worked in the course of her employment as follows: During the month of March 1958, 250⅔ hours and she was away 3 days that month on a trip; during the month of April 1958 she worked 200⅓ hours and was away on a trip 4 days that month; during the month of May 1958 she worked 128 hours and she was away on a trip to Kansas City May 5 and 6 and was away from her employment from May 19, 1958, for the balance of the month because of the illness of her father; during the month of June 1958 she worked 228½ hours and she was away 3 days that month. She discontinued her employment at the nursing home on June 29, 1958. The reason she

gave for quitting her employment was not because of health or disability conditions but because she wanted to go home and be near her little boy and her father who was ill.

Appellee continued the services of Dr. Roper until about 2 weeks before the trial of this case which commenced on May 18, 1959. She claimed she suffered pain in her back and leg and that her disability continued until and existed at the time of the trial.

The trial court in advising the jury the substance of the petition of appellee stated that she alleged that as a result of injuries caused her by the accident, her training as a nurse was terminated; that she sustained permanent impairments to her body; and that thereby she had been damaged in a substantial amount. In another part of the charge to the jury the trial court advised it that: "In fixing the amount of such damages you will take into consideration the character and extent of her injuries and disability, that is, whether the same are temporary or permanent in nature, the pain and suffering which she has already suffered, and the pain and suffering, if any, which she will undergo in the future; and you will take into consideration and allow therefor any medical expenses necessarily incurred in the treatment of her injuries, together with all future disability * * *." The applicable doctrine in this state is that the future pain and suffering which a jury may consider in determining damages are such as evidence shows with reasonable certainty will be experienced by the injured litigant as a proximate result of injury inflicted upon him and that a prerequisite to a recovery of damages for permanent injury is that the future effect of the injury on the claimant must be shown with reasonable certainty.

In McGowan v. Dresher Bros., 106 Neb. 374, 183 N. W. 560, the court observed: "A party is not required to prove permanent injury with absolute certainty, yet a mere conjecture or probability is not sufficient. The

burden of proof was on plaintiff, and the testimony must show such permanent injury with reasonable certainty. * * * Furthermore, there was no attempt to prove the degree of the future impairment in the use of the members or in the loss of earning power."

In Bresley v. O'Connor, Inc., 163 Neb. 565, 80 N. W. 2d 711, this court, in approving an instruction concerning future pain, said: "According to the medical testimony, the plaintiff would continue to suffer pain in the future for an undeterminable period. The court, by giving such instruction, did nothing more than permit the jury to make allowance for such future pain and suffering of plaintiff as might be established by the evidence with reasonable certainty, contingent upon the evidence also showing with reasonable certainty how long such future pain and suffering might continue * * *."

Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891, declares: "The future pain and suffering which a jury is entitled to consider in the assessment of damages are such as the evidence shows with reasonable certainty will be experienced by the injured person."

Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254, says: "Damage for permanent injury may not be based upon speculation, probability, or uncertainty but it must be shown by competent evidence that such damage is reasonably certain as a proximate result of the pleaded injury." See, also, Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643; Welstead v. Ryan Constr. Co., 160 Neb. 87, 69 N. W. 2d 308.

The record yields no evidence of the quality required to show with reasonable certainty that appellee suffered a permanent injury as a proximate result of the collision of the automobiles or that damage is reasonably certain to occur as a result of the injuries pleaded by appellee. Likewise, evidence is wholly lacking to establish with reasonable certainty that future pain and suffering will be experienced by appellee as the result of any injury inflicted on her by the accident. The in-

structions described above were prejudicially erroneous.

The judgment should be and it is reversed and the cause is remanded for further proceedings according to law.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.