FRANCES J. HERNDON, APPELLEE, v. BRYCE CRAWFORD ET AL., APPELLANTS.

119 N. W. 2d 82

Filed January 4, 1963. No. 35287.

Haney & Walsh, for appellants.

Schrempp & Lathrop, S. J. Albracht, and Henry C. Rosenthal, Jr., for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The plaintiff, Frances J. Herndon, brought this action at law to recover damages for personal injuries sustained by her when the automobile of the defendants, Bryce Crawford and Mary B. Crawford, driven by Mary B. Crawford, backed out of a parking place at the Countryside Village Shopping Center in Omaha and collided with the back end of an automobile in which the plaintiff was sitting. The case was tried to a jury resulting in a verdict for the plaintiff in the amount of $1,500. The defendants' motion for judgment notwithstanding the verdict or in the alternative for a new trial was overruled. The defendants perfected appeal to this court.

The plaintiff's amended petition alleged in substance that the plaintiff was sitting in a 1955 Pontiac automobile owned by her husband, Earnest Herndon, when the defendant Mary B. Crawford negligently backed into the automobile in which the plaintiff was sitting; and that the injuries resulting to the plaintiff were occasioned as a direct and proximate result of the negligence of the defendants, and each of them, in failing to keep a proper lookout for automobiles parked in the parking place, and in particular the automobile in which the plaintiff was sitting, and in failing to give any notice of the defendant Mary B. Crawford's approach to the automobile in which the plaintiff was sitting. The amended petition then described the injuries which the plaintiff allegedly sustained, and alleged that the plaintiff was forced to spend $417 for hospitalization, $50 for medical treatment, and loss of wages in the amount of $810.

The plaintiff's husband assigned in writing his cause of action to the plaintiff.

The defendants, by answer to the plaintiff's amended petition, denied that they were guilty of any negligence that caused or contributed to the alleged accident, and alleged that the collision was caused solely and proximately by the negligence and carelessness of the plaintiff in the following particulars: In failing to keep a proper lookout while backing her automobile; in failing to give any notice whatsoever of her sudden approach in backing her automobile; and in failing to yield the right-of-way to the defendants' automobile which had entered the driving portion of the parking place prior to the approach of the plaintiff's automobile which was backing up. The defendants' answer specifically denied that the injuries alleged in the plaintiff's amended petition were caused or came about in any manner whatsoever as a result of the collision referred to in the plaintiff's amended petition.

The plaintiff's reply to the defendants' answer denied every material allegation contained therein.

For convenience we will refer to Mary B. Crawford as the defendant, and to Frances J. Herndon as the plaintiff.

The defendant was called as a witness for the plaintiff and testified that at the time of the accident she owned a 1957 DeSoto automobile which was used for family purposes; and that on the day of the accident July 17, 1959, she had been shopping at the Countryside Village Shopping Center and parked in front of the Broadmoor Grocery Store, facing south. The plaintiff parked in front of the hardware store which was directly opposite the grocery store. The accident happened about 5:30 or 6 p.m. The defendant further testified that she started her automobile, released the brake, pushed the reverse button, applied the accelerator a little bit, and then felt a bump; that she did not recall looking to the rear or seeing the automobile behind her; and

that when she became aware of the fact that she had struck another automobile which was facing north in front of the hardware store on the opposite side from defendant's automobile and parked in a normal position, she got out of her automobile and noticed a dent in the trunk of the Herndon automobile. The defendant gave her name and address to the plaintiff and told the plaintiff she would contact her husband and let him take care of the matter. The defendant also obtained the plaintiff's name and address. The defendant further testified that she did not see the Herndon automobile moving or anything like that prior to the time she collided with it.

The plaintiff testified that on the day of the accident she had occasion to be out at a restaurant where her husband was working as a chef at Ninetieth and Center Streets in Omaha; that she was asked to go to the Countryside Village area to obtain a quart measure which her husband needed; and that she parked in front of a hardware store and was sitting on the right side of the automobile which a Mr. Qualls had driven for her. She further testified that Qualls went into the hardware store to pick up the measuring cup and he was going to drive the automobile back to the restaurant; and that all of a sudden the back end of the automobile in which she was sitting was hit. The plaintiff was thrown backward then forward, and her right knee hit against the glove compartment. The plaintiff then turned around and saw the automobile behind her. She got out of her automobile to find out what had happened, and asked the defendant if she would get out of her automobile and see what had happened to the automobile in which the plaintiff had been sitting. The defendant told the plaintiff she would give plaintiff her name and address and things would be taken care of. The plaintiff and defendant exchanged names and addresses. At the time this conversation was going on, Qualls was coming from the hardware store to the automobile. The plain-

tiff further testified that she was shaken up; that she got back into the automobile and Qualls drove her back to the Center Cafe; that the longer she sat in the automobile the more her right leg and knee hurt; and that when she got out of the automobile and put her weight on the leg she knew there was something wrong with her knee. The plaintiff further testified that she thought her knee was just bruised and did not want to run off to the doctor. She thought she would wait a few days and see if the trouble would go away, but it did not. She waited a week to ascertain if the trouble would wear off. She had an appointment with her regular doctor on the 24th, and wanted to see him about other things, but did discuss with him the trouble with her knee and told him about the accident. She also went to a Dr. Tribulato, a general practitioner, and ultimately went to an orthopedic surgeon, Dr. Bach, in October. Prior to going to Dr. Bach, she treated her knee with hot packs. Dr. Bach examined her knee and put her to bed in the hospital. He put a plaster cast on her leg. After 8 weeks, a half cast was put on her right leg. She was in a wheelchair around home after she left the hospital, and was unable to do any housework, and was not employed. She needed assistance to get up and down. After the cast was taken off, she used crutches until just before Christmas. The first time she was able to get up and around without the use of crutches was in the spring of 1960. The plaintiff further testified that after her treatment by Dr. Bach and the removal of the cast, the condition of her knee was somewhat better; that she was required to wear an elastic bandage on the knee because if she stood too long she got tired, and the support helped; that with such aid she was able to work practically every day; and that on October 10, 1959, she had a bandage on her knee and stooped over to put a potato sack in the sink when she experienced a quick, sharp pain and had to support herself and had a hard time getting her leg

straightened out. The plaintiff further testified that at the time of the accident she was working for the Armstrong Cleaners as a lister and checker for intake and outtake of clothes and storage; and that she had worked for about 3 months for a salary of $1 an hour, and averaged 8 hours a day, some days 9 hours, and on Saturdays between 4 and 5 hours. She also testified that she was unable to work until January 1, 1961.

On cross-examination the plaintiff testified that from the date of the accident, July 17, 1959, she continued to work at the Armstrong Cleaners until September 1959; and that she did not mention to the defendant that she received any injury at the time of the accident because she did not feel it at the time, she was just shaken up.

Dr. Bach, on October 19, 1959, examined plaintiff's right knee and found pain and tenderness about the inner side of the right knee particularly, and local swelling. This witness thought the plaintiff had an internal derangement of the knee and probably or possibly a torn medial semilunar cartilage. The plaintiff was put in traction for a few days and then a cast was applied from the ankle joint to the hip. On November 20th, the doctor took part of the cast off and used the remaining half of the cast as a splint for a little while. The plaintiff wore the half cast for approximately 10 days. The doctor further testified that he saw the plaintiff on November 30, 1959, and on January 9, 1960, and she seemed better. In answer to a hypothetical question, the doctor gave his opinion with reasonable medical certainty as to the causative connection between the original injury of July 17, 1959, and the pain which the plaintiff experienced from that date on, as follows: "In view of the fact that the question states that the patient had no pain prior to the incident and had continued discomfort afterwards I would say that there is a causative connection." The doctor's diagnosis was that the plaintiff suffered a sprained medial lateral liga-

ment, and had osteoarthritis of both knees. He further testified that he had no record of the plaintiff having any difficulty following an automobile accident. The doctor further testified that the plaintiff had a little flareup of pain in her knee on January 9, 1960, when he saw her. He sent her to a physical therapist for treatment and gave her some medication. The doctor's bill was $55.

Dr. Bach was not asked his opinion as to whether or not the plaintiff would have any permanent or future pain and suffering as a result of the alleged injury. The only evidence presented of continual pain from the date of the accident up to the time that Dr. Bach examined the plaintiff is the evidence of the plaintiff herself.

Gloria Ann Nordbye testified that she is a sister of the plaintiff; that on either July 20 or 21, 1959, there was a birthday party for the plaintiff's son Jackie at the plaintiff's residence between 6 and 7 p.m.; that she was present at the party for 2 or 3 hours; that during the party this witness did not hear the plaintiff complain about being hurt; that the plaintiff carried on like any mother would in giving a birthday party; and that the plaintiff was not limping that evening. This witness further testified that about the last part of August or the first part of September there was a gathering at the home of this witness; that they pulled the table back in the diningroom to endeavor to teach Jackie, the plaintiff's son, to dance; and that the plaintiff danced and made no complaint about any pain in her leg or about being hurt in an automobile accident.

Nellie Rowin, another sister of the plaintiff, testified that she was present at Jackie's birthday party the 20th or 21st of July; that she observed the plaintiff and talked to her; that the plaintiff made no complaint about an accident; and that she did not notice the plaintiff limping, nor did the plaintiff complain of pain or discomfort. This witness further testified that she was at a family gathering at Mrs. Nordbye's home some time

after July 17, 1959, and that the plaintiff was there and danced and had a good time.

A Mr. Qualls accompanied the plaintiff to the hardware store. He testified that the plaintiff stayed in the car. He heard a crash while he was inside the store. He looked out the window and saw that a collision had occurred. The plaintiff complained of hurting her knee in the accident.

On cross-examination it developed that this witness had been interviewed by an attorney accompanied by a court reporter on November 17, 1960. He made a statement which was used in cross-examination. His statement disclosed that he was in the right front seat of the automobile and that the plaintiff was in the driver's seat backing her car. He told the plaintiff to look out, and the collision occurred "right away." He was not shaken up or injured by the accident. He further said that the plaintiff was backing out of her parking place at a speed of less than 5 miles an hour. He then changed his testimony to say that the plaintiff was not moving at all. He further said that the plaintiff had backed less than 4 feet at the time of the collision.

It was indicated by the record, without objection, that the plaintiff was in the hospital from October 19, 1959, to October 30, 1959, and that the hospital charge was $319.75.

In rebuttal the plaintiff testified that on July 4, 1959, she and her sisters and their families went to the State Lakes for recreational purposes. Later in the evening they went to Mrs. Nordbye's house and played records, and she danced with her relatives. There is no evidence on the part of the plaintiff of any party being held by her for her son Jackie on July 20 or 21, 1959, as testified to by her sisters. The plaintiff testified that she did no dancing after July 17, 1959. The record discloses that the plaintiff and her sisters had difficulty over family matters.

The defendants argue that the following part of instruction No. 13 is prejudicially erroneous: "You will also consider any loss of wages which may have been lost by the Plaintiff as the result of this injury. You will also take into consideration any pain and suffering, both physical and mental, which you may find Plaintiff endured at and since the time or may endure in the future as the direct and proximate result of the collision.

"There is no rule which the Court can give you to measure the amount of damages from pain and suffering, but you will take into consideration all of the facts and circumstances as shown by the evidence in the trial, and arrive at such an amount as in your judgment will fairly compensate the Plaintiff for the pain and suffering she endured or may endure in the future, and if your verdict be in favor of the Plaintiff you should add this to the total medical bills and loss of wages and arrive at such an amount as in your judgment will fairly compensate Plaintiff for the damage she suffered as a direct and proximate result of the collision."

The following is applicable.

In Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891, it is said: "The future pain and suffering which a jury is entitled to consider in the assessment of damages are such as the evidence shows with reasonable certainty will be experienced by the injured person." See, also, Hermilla v. Peterson, 171 Neb. 365, 106 N. W. 2d 507.

The evidence is wholly lacking to establish with reasonable certainty that future pain and suffering will be experienced by the plaintiff as a result of the alleged injury inflicted on her by the accident. We find instruction No. 13 to be prejudicially erroneous.

Other matters raised by the defendants need not be discussed.

For the reasons given in this opinion we reverse the judgment and remand the cause for new trial.

REVERSED AND REMANDED.