LOIS BASSINGER, APPELLEE, V. LIBBIAN A. AGNEW, APPELLANT.

290 N. W. 2d 793

Filed April 8, 1980. No. 42574.

Wellensiek & Rehmeier, for appellant.

Hoch & Steinheider, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Appellant, Libbian A. Agnew (defendant), appeals from a jury verdict of $6,250 entered in favor of appellee, Lois Bassinger (plaintiff), as a result of an automobile-pedestrian accident. The trial court had directed a verdict as to liability. Defendant assigns as errors the following: (1) The court refused to direct a verdict in defendant's favor at the conclusion of plaintiff's evidence; (2) The court ruled that defendant was guilty of negligence as a matter of law; (3) The court failed to instruct the jury on the question of plaintiff's contributory negligence; and (4) The verdict of the jury was not supported by the evidence and was excessive. We reverse and remand for a new trial.

The accident in question occurred on August 11, 1977, along the south side of St. Mary's Hospital in Nebraska City. The hospital is located on the north side of Third Avenue, just east of 14th Street, and the accident happened near an entrance which faces to the south. The entrance doorway itself opens out from what appears to be a waiting room addition, which addition extends out to the south a distance of approximately 20 feet from the main building and is about 55 feet long from east to west. To the immediate east of the hospital, taking up most of the remainder of the block, is a parking lot for automobiles. A driveway approximately 10 feet in width runs from the parking lot in a straight westerly direction along the hospital entrance a distance of about 5 or 6 feet to the south of it. Immediately west of the entrance is a flower bed taking up the space between the driveway and the wall of the waiting room and extending approximately 10 feet west to the outside wall of the waiting room structure. From that point on, an open expanse of lawn across which pedestrians

can walk extends and fans out to the northwest, west, and southwest. Just at the east edge of the flower bed, the driveway begins to curve to the south and terminates, running straight south onto Third Avenue.

Proceeding due south from the entrance is a pedestrian sidewalk which, after crossing the driveway, continues on south to the public sidewalk running along the north side of Third Avenue. Other than on that sidewalk and the driveway, there was no other way for a pedestrian to proceed from the hospital to the public streets or sidewalks.

At approximately 3:15 p.m. on the day of the accident, plaintiff, the housekeeping supervisor at the hospital, and two of her coworkers, Mildred Lyerla and Judy Jensen, concluded their duties for that day and were leaving the hospital. All three women, with plaintiff in the lead, followed by Mrs. Lyerla and then Mrs. Jensen, came out of the entrance, stepped off the curb onto the driveway, and proceeded in a single file in a westerly direction. According to Mrs. Lyerla's testimony, all three women looked both to the east and to the west before stepping onto the driveway and there were no moving automobiles in sight. Also, they were all walking right next to the curb on the north side and it was not possible to walk off the driveway at that point because of the flower bed. She went on to say that "out of the blue sky, well, here comes this car. Goes by this Judy and me and she hits Lois. She just didn't make the turn." The point where the plaintiff was struck was just about where the driveway begins to curve to the south. According to the testimony of the witness, the car did not stop, but the witness observed the license plate number. The other two women then helped plaintiff up and into the hospital.

The plaintiff testified in her own behalf and said she was a 47-year-old married woman who had three

children, one of whom was a minor, aged 16, and still at home. Her version of the accident was very similar to Mrs. Lyerla's. She said they walked out the entrance, looked both ways, saw no cars, and then proceeded to walk in a westerly direction in single file right up next to the curb. She said this was her usual route in leaving work and ordinarily, when she got to the end of the flower bed, she would step up onto the grass and walk across the lawn. According to her testimony, three-fourths of the people leaving the hospital do so in the same manner. While still alongside the flower bed, she said, there was "[j]ust this awful loud thud that hit me and knocked me down." She said she was struck on the left hip and thigh and was knocked to the ground. When asked if she saw the car after it hit her, she said she knew it was there and that she was between it and the curb and she was in fear she would be run over.

The defendant's version of what happened is that there was no accident at all. She testified that she proceeded on down the driveway in a westerly direction past the door and saw the three women walking in single file in the same direction alongside the flower bed. She claimed to have stayed as far to the south side of the driveway as she could and, as she was passing the pedestrians, "the first one leaned over toward the driveway a little bit farther and I thought at the time she must have dropped something . . . and she seemed to lean over to pick it up." Defendant claimed to be going not more than 5 miles per hour and insisted she felt nothing that would give her any reason to believe she had struck anyone. She knew nothing about the accident until contacted by the police a short time later when she had returned to her home.

The first three assignments of error may be treated together. Basic to a consideration of them is an awareness of the rule that a motion for a directed

verdict must be treated as an admission of the truth of all material and relevant evidence favorable to the party against whom the motion is made and who is entitled to the benefit of all proper inferences that can reasonably be deduced therefrom. *Empfield v. Ainsworth Irr. Dist.*, 204 Neb. 827, 286 N.W.2d 94 (1979). Also important in our determination is the corollary to that rule that, at the conclusion of either party's case, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find on a particular issue in favor of the party upon whom the burden of proof on that issue is imposed. *Id.*

With these basic rules in mind, it is necessary to explore the rules of substantive law that are applicable to this particular case. In *Nygaard v. Stull*, 146 Neb. 736, 21 N.W.2d 595 (1946), we held that the rules of the road fixed by the statute then in effect, Neb. Rev. Stat. § 39-741 (1943), extended not only to all public highways, but also to all roads not public highways if used for travel by the public. That particular statute defined the term "highway" as "every way . . . open to the use of the public, as a matter of right, for the purposes of vehicular travel . . . ." Since that time, that particular statute has been repealed and in its place is Neb. Rev. Stat. § 39-602 (Supp. 1979), which defines a highway as "any . . . way which is publicly-maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Additionally, a private road is defined by that statute to mean "every way . . . in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons." The driveway in question where the accident occurred was not "publicly-maintained," but rather privately owned subject to usage by patients, visitors,

and others having legitimate business at the hospital, and would not seem to qualify as a highway. Neb. Rev. Stat. § 39-603 (Reissue 1978) mandates that the rules of the road as provided by Neb. Rev. Stat. §§ 39-601 to 6,122 (Reissue 1978) "refer exclusively to operation of vehicles upon highways." We hold that the driveway in this case was a private way and that the rules of the road as set forth in §§ 39-601 to 6,122 did not apply to its use.

However, that is not to say that the general rules as to the degree of care and prudence established by the common law to be employed by users of public ways should not be applicable in the instant situation. In *Caldwell v. Heckathorn*, 176 Neb. 704, 707, 127 N.W.2d 182, 185 (1964), we held that "A pedestrian has equal rights with the operator of a vehicle in the use of public highways and each must use reasonable care for his own safety and the safety of others."

This rule applies with equal force to a private way used by members of the public. See 60A C.J.S. *Motor Vehicles* § 349 (1) at 464 (1969):

> [U]nder the common law or general tort law, there is a duty of exercising due care and avoiding injury to others, resting on one who operates a motor vehicle in places other than public streets or highways, as, for example, in operating on a private driveway or a private road . . . .

Without deciding this precise point, we have held in cases in which the accident did occur on private property that the question of negligence of the operator and the contributory negligence of the pedestrian was a question of fact for the jury. *Thomas v. Fundum*, 135 Neb. 728, 283 N.W. 839 (1939); *Johns v. Glidden*, 173 Neb. 732, 114 N.W.2d 767 (1962). See, also, *Anderson v. Wilcox*, 189 N.W.2d 541 (Iowa 1971).

Defendant bases her contention that the court

should have directed a verdict in her favor following the close of plaintiff's case on the theory that plaintiff stepped from an area of safety into an area of danger. She cites *Zawada v. Anderson,* 181 Neb. 467, 149 N.W.2d 329 (1967). However, in that case we denied defendant's motion for a directed verdict and stated: "In a literal sense, we suppose any pedestrian involved in a collision with a vehicle at an intersection crosswalk has moved from a place of safety into the path of danger at some point during the crossing." *Id.* at 469, 149 N.W.2d at 332. The more important inquiry in this case is whether or not plaintiff was negligent in failing to see the oncoming vehicle of the defendant if, in fact, it was within her sphere of vision at the time she stepped onto the driveway. There is nothing in the record before us justifying the drawing of a conclusion that the plaintiff was guilty of contributory negligence as a matter of law.

The answer to the second and third assignments of error is found in the conflicting evidence submitted by the two parties. There was no indication of what part of the automobile struck the plaintiff. Therefore, on that point alone, it is just as consistent to conclude that after defendant had successfully and safely passed the first two women and was part of the way past the plaintiff, the plaintiff did move farther out into the driveway and into the side of the car. This would be consistent with defendant's version of the accident, to which we have previously referred. She testified: "As I got up even with these ladies, the first one leaned over toward the driveway a little bit farther and I thought at the time she must have dropped something, maybe her purse or something; and she seemed to lean over to pick it up. And then they — I moved on a little bit. I was going quite slow." When asked whether she felt a "thump or anything," she replied "No, I didn't feel a thing. That's why when the three of them turned around

and started back east I had no reason to think anything happened or that I had done anything." Although the testimony of the other two witnesses, the plaintiff and Mrs. Lyerla, does not corroborate defendant's testimony, neither does it dispute it. Neither of the latter two witnesses was asked nor testified as to the manner in which the actual impact took place and neither specifically disputed the defendant's claim that plaintiff leaned out into the driveway just as defendant was going past her. Although, logically, defendant's testimony may not appear to be as believable as that of the other two witnesses, we cannot say as a matter of law that the accident did not happen in the manner related by defendant. As stated in *Caldwell v. Heckathorn, supra* at 710, 127 N.W.2d at 186:

> The plaintiff had a legal right to walk longitudinally along the highway or to stand alongside his car, but in doing so he is required to use reasonable care for his own safety. [Citations omitted.] The question is whether the plaintiff was in the exercise of ordinary care under the circumstances then existing. As we view it, this is a question to be determined by the jury.

This then disposes of the second and third assignments of error. The question of defendant's negligence and plaintiff's contributory negligence were questions of fact which should have been submitted to the jury under proper instructions and the trial court erred in failing to do so.

Although it is not necessary to a determination of this appeal that we consider the defendant's last assignment of error, we feel that, because a new trial will be necessary, some comment should be made in regard to the court's instructions on the measure of damages. The instructions permitted the assessment of damages for future disability and pain and suffering for the remainder of the plaintiff's ex-

pected lifetime. The defendant's assignment of error did not specifically point out or argue the instructions, but merely claimed that the damages were excessive. She did, however, specifically object to such instructions at the conference on instructions.

The only testimony as to the possibility of future damages came from Dr. R. C. Fenstermacher. He was asked whether the pain and discomfort in the leg would be permanent. His answer was that "It's very difficult to say whether they'll be permanent, on and on." In the court's syllabus to *LeMieux v. Sanderson*, 180 Neb. 311, 142 N.W.2d 557, 559 (1966), we said: "Where there is competent evidence of future pain and suffering that is reasonably certain to continue into the future, the amount of damages is for the jury." Reaching a contrary result, but based on the same rule of law, this court stated in *Hermilla v. Peterson*, 171 Neb. 365, 379, 106 N.W.2d 507, 514 (1960):

> The record yields no evidence of the quality required to show with reasonable certainty that appellee suffered a permanent injury as a proximate result of the collision . . . or that damage is reasonably certain to occur as a result of the injuries pleaded by appellee. Likewise, evidence is wholly lacking to establish with reasonable certainty that future pain and suffering will be experienced by appellee as the result of any injury inflicted on her by the accident.

We believe that the court erred in instructing on these particular elements of damages on the basis of the record before us.

The judgment is reversed and the case remanded to the District Court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

CLINTON, J., not voting.