DEBORA MORFELD AND JAMES WILLIAMS, APPELLEES, V. HENRY BERNSTRAUCH, DOING BUSINESS AS BERNSTRAUCH WRECKER SERVICE, APPELLANT.

343 N.W.2d 880

Filed January 20, 1984. No. 82-619.

Brogan & Stafford, P. C., for appellant.

Richard L. Spittler, for appellees.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for amicus curiae State.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an action in replevin brought by plaintiffs, Debora Morfeld and James Williams (daughter and father and the legal owners of a 1968 Pontiac automobile), against defendant, Henry Bernstrauch, doing business as Bernstrauch Wrecker Service (the owner and operator of a towing service).

At the pretrial conference the parties waived their right to jury trial and the case was tried to the court. In that event, the findings of the trial court have the effect of a verdict of a jury; and on appeal, in considering the sufficiency of the evidence to sustain the judgment, the evidence will be considered in the light most favorable to the successful party, any controverted fact will be resolved in that party's favor, and the successful party will have the benefit

of every inference reasonably deducible from the evidence. *First State Bank of Scottsbluff v. Bear*, 172 Neb. 504, 110 N.W.2d 83 (1961).

After trial the court ordered the automobile returned to plaintiffs and assessed damages of $9,570, plus costs, against defendant. Defendant appeals, assigning as error that the trial court erred in determining that plaintiffs were entitled to a return of the car without paying towing and storage charges and that, in any event, the trial court erred in awarding excessive damages to plaintiffs. For the reasons hereinafter stated we affirm.

The evidence in the record before us, when viewed most favorably to plaintiffs, discloses the following. During the late evening of November 14, 1979, an on-duty Nebraska state patrolman received a call about a "drunk driver" in a car going south on U.S. Highway 81, south of Norfolk, Nebraska. He had also received calls concerning a hit-and-run parked car accident at a bar in Norfolk involving an older model blue car. The patrolman was informed over his radio that the car on Highway 81 had hit an abandoned concrete gas pump island at the Old Home Cafe. The patrolman examined the island and saw "a knick [sic] in the concrete and blue paint on it." The patrolman then followed a trail of liquid, which he believed to be from a car's radiator, from the Old Home Cafe to the Custer mobile home court, located 6 miles south of Norfolk and a quarter of a mile west of Highway 81. There the patrolman saw plaintiffs' blue 1968 Pontiac parked in front of a trailer house on Lot 6B. The trailer court consisted of 20 units. There was a private gravel road, maintained by the owner of the trailer court, through the court. Parking for automobiles was available in front of each trailer. The entire trailer court, including the road, was private property.

The patrolman proceeded to the trailer on the lot in front of which the car was parked. At the door to the trailer home he was met by the former husband

of plaintiff Debora Morfeld. Plaintiff and her former husband had been divorced for some 2 years, but were living together in the trailer with their two children. The patrolman inquired of Mr. Morfeld as to the ownership of the car in question. Mr. Morfeld was not cooperative in this conversation, and an altercation eventually ensued between the patrolman and Mr. Morfeld. Mr. Morfeld was arrested for assault, handcuffed, and ultimately taken to the Norfolk city jail.

Plaintiff Morfeld was asleep on the floor throughout. The patrolman checked her for injuries, but determined she was not injured, but probably intoxicated. There was no evidence at this time as to who was driving the 1968 Pontiac before it was parked. The patrolman then called for defendant to tow the car in question from its parking place to defendant's storage lot. Following the patrolman's directions, defendant entered the private property where the car was parked and towed the car to his lot, where the car was locked in.

Debora awakened about 4 a.m. on November 15, 1979, to find her former husband gone. Mr. Morfeld returned to the trailer later in the morning. Debora then called defendant and asked if she could have her car. Defendant advised her that the matter had to be cleared with the State Patrol. Debora then called the State Patrol and was told that it would take 3 days to "clear the car," because the patrol wanted to take paint samples from the car. Debora waited the 3 days and again called defendant, who informed her that the car had been released by the patrol and that Debora could have the car upon payment of the storage and towing fees. Debora refused to pay, and defendant refused to release the car without payment. The stalemate between the parties followed and ultimately resulted in this litigation. Although it might be noted that only approximately $35 separated the parties at this point, each party had rigidified its position based on prin-

ciple: plaintiff relying on her right to the use of her personal property without unlawful interference of others, and defendant relying on the workman's right to be paid for his toil. From such disputes over principle, extraordinary and expensive litigation often springs.

It should be noted that in connection with the events of November 14 and 15, 1979, Debora was never charged with any offense of any nature. By her testimony in this case, it is clear that Debora was driving the 1968 Pontiac south on Highway 81 on the night in question.

We turn, then, to the question of the propriety of the defendant's removal of plaintiffs' car from the private property where it was located. Admittedly, the removal was done by defendant at the direction of the state patrolman. Defendant's legal problem on this point is that the patrolman was without any authority to remove the privately owned car from the private property on which it was located. Defendant suggested to the trial court that Neb. Rev. Stat. § 39-671 (Reissue 1978) authorized the patrolman to order the car removed, and to require Debora to pay the appropriate storage and towing fees. In *Bassinger v. Agnew*, 206 Neb. 1, 290 N.W.2d 793 (1980), however, this court recognized that the Nebraska Rules of the Road, as set forth in Neb. Rev. Stat. §§ 39-601 to 39-6,122 (Reissue 1978) (which include § 39-671), do not apply to private roads or private property. The trial court so held. Once it is established that the officer had no statutory authority to remove the car from private property, Debora is entitled to her constitutional rights under article I, § 7, of the Constitution of the State of Nebraska to be secure in her person, house, papers, and effects against unreasonable searches and seizures, unless a proper warrant was issued. There was no warrant issued in this case, and there were no exigent circumstances brought to the attention of the trial court to justify a seizure without a warrant.

The trial court was correct in determining that the officer had "absolutely no authority to seize the automobile in question."

Once that point is established, we must determine defendant's personal responsibility for his unlawful act in seizing the car. Defendant has personal knowledge as to the answer to this question. In *Kuchar v. Bernstrauch*, 192 Neb. 225, 219 N.W.2d 764 (1974), this court considered a replevin action in which the plaintiff's car had been seized and impounded by the State Patrol on suspicion that the car was being used to transport marijuana. The car was seized by the State Patrol and placed in defendant's lot for storage. No showing was ever made that any controlled substance was ever found in the plaintiff's car. In the *Kuchar* case, *supra*, the county court had ordered the car released to plaintiff, but defendant (acting in exactly the manner in which he reacted to Debora in the instant case) demanded his storage fees before he would release the car. Kuchar then filed his replevin action, which was denied in the county court. On appeal the district court found for the plaintiff as to the right of possession and damages, and remanded the case to the county court to determine the damages. This court affirmed the action of the district court, stating at 227, 219 N.W.2d at 766, "The defendant's refusal to deliver the automobile to the plaintiff on order of the county court was wrongful and willful. He had no lien on the automobile although he had a claim against the State for his storage charges. An agent is personally liable to third persons for his own misfeasances and positive wrongs. Wilson v. Thayer County Agricultural Society, 115 Neb. 579, 213 N.W.2d [sic] 966.

"The plaintiff was entitled to possession of the automobile on March 1, 1973, and for damages for its wrongful detention thereafter."

This case is in exactly the same posture as *Kuchar v. Bernstrauch*, *supra*. Here, also, defendant's re-

fusal to deliver the car to Debora was wrongful and willful. He had no lien on plaintiffs' car, and defendant is personally liable to plaintiffs "for his own misfeasances and positive wrongs."

We turn, then, to the question of damages. The controlling statute is Neb. Rev. Stat. § 25-10,105 (Reissue 1979), which provides: "In all cases when the property has been delivered to the plaintiff, where the jury shall find for the plaintiff, on an issue joined, or an inquiry of damages upon a judgment by default, they shall assess adequate damages to the plaintiff for the illegal detention of the property; for which with costs of suit, the court shall render judgment for plaintiff." It is at least of historical interest to note that this statute is worded exactly in the way in which it was adopted in 1867, except for the 1913 correction of the last word "defendant" to "plaintiff." The phrase "adequate damages to the plaintiff for the illegal detention of the property" has been the subject of much litigation since 1867. Defendant cites us to *Romberg v. Hughes*, 18 Neb. 579, 26 N.W. 351 (1886), and informs us that no part of that case has ever been overruled. Not so. In *Schrandt v. Young*, 62 Neb. 254, 86 N.W. 1085 (1901), Commissioner Roscoe Pound thoroughly analyzed the problems of damages in replevin actions. In *Schrandt, supra* at 259, 86 N.W. at 1087, Pound states, for the court, "What, then, is the measure of damage for detention? Ordinarily it is interest upon the value of the property. [Citations omitted.] But where the use of the property is valuable, the value of the use may and often does considerably exceed the lawful rate of interest. In such case interest does not afford adequate compensation, and, accordingly, it is well settled that the value of the use, where use has a special value above and in excess of interest, is recoverable as damages for detention, and is the measure thereof, instead of interest."

Commissioner Pound goes on to state in *Schrandt v. Young, supra* at 263, 86 N.W. at 1088, "Value of the

use of the property is a just and recognized element of such damages, and the right to it should not be made nugatory by limiting its recovery to the event of a return. Hence we think that *Romberg v. Hughes* should be limited, in its application, to damages for depreciation and deterioration, and that measure of the damages for detention recoverable by a defendant in replevin may be stated thus: He may recover, (1) if there is no special value attaching to use of the property, interest; (2) if the value of use of the property exceeds the interest, then such value, without regard to whether the property is returned, but, in such case, no interest; (3) if loss, deterioration or depreciation occur while the property is withheld, then the amount of such loss, damage or depreciation, to be conditioned, however, upon return of the property, the alternative judgment for the value being fixed as of the date of the taking. Moreover, the damages for detention must be such as grow out of the detention and are connected with or incident to the contest over possession."

It should be noted that *Schrandt* involved damages as computed for a defendant where the taking was wrongful, but as stated in *White Motor Credit Corp. v. Sapp Bros. Truck Plaza, Inc.*, 197 Neb. 421, 427, 249 N.W.2d 489, 494 (1977), "Damages allowed for wrongful detention are succinctly stated in Schrandt v. Young (1901), 62 Neb. 254, 86 N.W. 1085. Although that case involved damages recoverable by a defendant under the predecessor statute to section 25-10,103, R.R.S. 1943, the language is equally applicable where judgment is for the plaintiff."

Recognition of the right to recover damages for wrongful detention has been recognized in Nebraska since 1867. The difficulty in the cases has been how to calculate the damage. In this case no such problem is present. The parties stipulated, "That the fair and reasonable rental value of the subject automobile at all times material hereto would be $10.00 per day." At the conclusion of plaintiffs' case,

plaintiffs submitted that stipulation, together with the calculation that 957 days had elapsed since the wrongful taking of the automobile. The trial court found that "the damage for the loss of use of the vehicle is $10.00 a day." No other evidence on the loss of use was submitted by either party.

The defendant raises the general question as to excessiveness of the verdict, and points out that plaintiff Debora Morfeld testified the automobile was only worth $1,200 before the impact at the Old Home Cafe, while defendant's witnesses testified that at the time of trial the car was only worth $50 or $60.

Plaintiffs' car has been ordered returned to them, and the value of the car is thus not in question, since plaintiffs have not sought or proven any damages for depreciation. The value of the use of a car may exceed the actual value of the car. It would seem that very few Rolls-Royce automobiles will be towed in and held for redemption and that the statute in question provided for loss-of-use recovery to provide for this very problem where an inexpensive chattel is wrongfully seized and, in effect, held for ransom. The 1968 Pontiac, whatever its value, was perfectly adequate to transport Debora to Norfolk and return her to her home. The value of that use has been stipulated to be $10 per day. The trial court was correct in assessing damages on that basis.

The whole case, with all its attendant problems, could always have been terminated by action of the defendant. After the state patrolman told defendant he had no further hold on the car, defendant could well have drawn on his knowledge of the decision in his own case of *Kuchar v. Bernstrauch*, 192 Neb. 225, 219 N.W.2d 764 (1974), returned the car, and then argued with the State Patrol and Debora about his relatively small towing fees. Defendant chose to stonewall the matter, and refused to return the car even upon filing of the lawsuit. He maintained the same attitude throughout the trial—contending that the car was worth only $50 or $60 and concluding his

evidence with a bill for $1,352 for storage and towing of this car. Defendant seems to believe that he is a law unto himself on replevin issues in Madison County. Short of physical solution of these problems, long lawsuits with commensurate high damages seem to be the only way to clear up the matter.

The judgment of the district court is correct, and it is affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting in part.

It seems to me that an award of $9,570 for the loss of use of a 1968 Pontiac automobile which was inoperable and valued at no more than $1,200 was clearly excessive.

A similar factual situation was presented in *Kroger Food Company v. Singletary*, 438 S.W.2d 621 (Tex. Civ. App. 1969). The trial court had awarded the plaintiff, whose car had been converted, $4 a day for loss of use. The car had a value of $175; the damages awarded for loss of use amounted to $1,760. In finding this award excessive the court said at 630: "While we have held that there is some evidence of the loss of use, we do not believe that the amount of this award should be permitted to stand.

"It has been said in one of the cases, Montgomery v. Gallas, 225 S.W. 557, 562 (Tex.Civ.App., 1920, no writ):

" '* * * It is a matter of common knowledge that there would have to be very exceptional circumstances to make the use of property for a year worth 50 per cent. more than its value. * * *'

"There being no 'exceptional circumstances' shown here, the award 'for a year' is more than eight times the value of the car. In the case from this court cited previously, Brown v. Spector, 70 S.W.2d 478, 480 (Tex.Civ.App., 1934, no writ), the court, after quoting from *Gallas*, supra, said:

" 'In this case for a period of only 497 days, representing the time the automobile was held by Sheriff Brown up to the filing of the first amended original

petition, judgment was rendered in Spector's favor for the use of his automobile a sum in excess of 5½ times the value of the automobile at the time it was seized. The judgment in the sum of $2,485 for the use of this automobile is so against the "common knowledge" of mankind as to be fundamentally erroneous.'

. . . .

"Here, the best that plaintiff can contend that he was deprived of the use of his car for approximately six months, that is, until he got a better one. Assuming that he was entitled to the $4.00 for every day as the rental value of his old car (an assumption upon which the evidence is not completely satisfactory), the award would not exceed approximately $900.00. This figure, in itself, is more than *five* times the market value of his car upon the date it was seized.

"The award of $1,760.00 is so grossly excessive that it shocks the judicial conscience. The amount of the award for loss of use of the car is considered by the court to be excessive by the sum of $860.00. In our opinion, under the circumstances of this case, damages for the loss of use of plaintiff's vehicle in the amount of $900.00 would be not only adequate but generous."

It has been held that any award of damages for loss of use must be limited to a certain time period. In *United States v. Hatahley*, 257 F.2d 920 (10th Cir. 1958), the court said at 923-24: "[T]he plaintiffs were entitled to the market value, or replacement cost . . . as of the time of taking, plus the use value . . . during the interim between the taking and the time they, acting prudently, could have replaced [the converted items].

. . . .

". . . But the right to such damages [loss of use] does not extend forever, and it is limited to the time in which a prudent person would replace [the items]."

In that case the court apparently based the limitation on damages for loss of use on reasoning similar to that found in the avoidable consequences rule. "The plaintiff who is injured by actionable conduct of the defendant, is ordinarily denied recovery for any item of special damages he could have avoided by reasonable acts, including reasonable expenditures, after the actionable conduct takes place.

. . . .

". . . One of the reasons for the avoidable consequences rule and the idea that damages should be minimized is that economic waste should be avoided. The problem usually arises where the cost of repair or replacement of damaged property exceeds its value . . . ." D. Dobbs, Handbook on the Law of Remedies § 3.7 at 186, 188-89 (1973).

In the present case there are no special circumstances to warrant an award for the loss of use of a used automobile greatly in excess of its value. Although the defendant did not plead that the plaintiffs could or should have minimized their damages, damage for the loss of use which they suffered should be limited to a period in which they, acting prudently, could have replaced the vehicle.

HASTINGS, J., joins in this dissent.