Hillsborough, }
Nov. 7, 1934. }

### Leonard E. Dorrien *v.* Joseph Sirois.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the plaintiff.

*O'Connor & Saidel,* for the defendant.

Marble, J. The defendant contends that his motions for a non-suit and directed verdict should have been granted because there is no evidence identifying him with the accident, because there is no evidence of his negligence, and because the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff was spending the week-end at the Gerardi house, so called, on Deer Neck road in Auburn. At the time of the accident he and Miss Margaret O'Toole were out walking. They had walked north along Deer Neck road about a quarter of a mile to the point where Rattle Snake road enters Deer Neck road from the west, then had turned and were walking back toward the Gerardi house when they observed the lights of two cars coming down Rattle Snake road

toward the intersection. It was between 9:30 and 10 o'clock in the evening.

The following is quoted from the plaintiff's testimony: "Q. As you came along . . . will you tell the jury what you noticed with reference to any automobiles approaching . . .? A. We were walking in the direction of the house, and we could see the reflection of the lights coming out of Rattle Snake road; I stopped to see which way they were going, whether south or not; when they got off Rattle Snake road to Deer Neck road, I saw they were coming south, in our direction, and we stepped back, two or three feet from the road itself, into the brush and let them by . . . Q. You were on the east side of the road? A. Yes, sir. Q. Facing toward the road west? A. Yes, sir. Q. You stood there as the automobile went by? A. Yes. Q. Did the first automobile go by all right? A. Yes, sir . . . . Q. Well, now, what happened to you? A. Well, something hit me on the side and knocked me into the brush, down on the ground . . . . Q. How fast would you say those two vehicles were going as they went by you? A. Thirty-five to forty miles an hour. Q. Whether or not it was a rough road? A. Very rough. . . . Q. How close was that second vehicle which turned out to be the truck, proceeding behind the car ahead of it? A. Ten or fifteen feet behind."

Miss O'Toole, in answer to an inquiry as to what happened after the first car passed, testified: "I felt something hit me on the forehead and I screamed. I said to Leonard, 'Something hit me', and I went to look for Mr. Dorrien and he was off on the side of the road . . . . I thought he was dying, so I screamed again and ran back as fast as I could to the Gerardi house, and I told them he was hit by a a car on the side of the road, and the people who were guests there came and picked him up."

She estimated the distance between the cars as 18 or 20 feet, and their speed to be 30 or 35 miles an hour.

As the cars turned from Rattle Snake road into Deer Neck road the headlights flashed into the kitchen of the Gerardi house, where Philip Gerardi was sitting. Soon afterwards Miss O'Toole came into the kitchen and told Gerardi that the plaintiff had been knocked down by an automobile. Gerardi went to the plaintiff's assistance. A half hour later he discovered the defendant's truck and an automobile belonging to Onesine Gosselin in Gosselin's yard a short distance south of the Gerardi house.

The defendant, his wife and children, and Mr. and Mrs. Gosselin had spent the evening at the Royer place on Rattle Snake road. They

returned to the Gosselin house about 10 o'clock. All rode in the Gosselin car except the defendant, who followed with his truck. After turning the corner into Deer Neck road Gosselin, Mrs. Gosselin, and Mrs. Sirois all saw two people (a young man and a young woman) standing on the left-hand side of the road halfway between the corner and the Gerardi house. Mrs. Sirois identified the young man as the plaintiff. No other cars passed the plaintiff and Miss O'Toole during their walk back toward the house. The defendant, on cross-examination, testified: "I was looking in front of me, in the middle of the road, you might say . . . . I didn't see the people on the side of the road . . . . I didn't see them for some reason; . . . you don't look to the right and left all the time, look off."

The road was a rough country road with ruts. The traveled part was nine feet, six inches wide. The body of the defendant's truck was made by the defendant himself, and, according to his testimony, consisted of a platform six feet wide and twelve feet long with sides three feet high, fastened on with stakes. The plaintiff, who saw the truck after the accident, expressed the opinion that the width of the body was about seven feet.

There was evidence of an admission made by the defendant some weeks after the accident. The plaintiff testified: "I had a friend drive me up there . . . to find out what Mr. Sirois knew about the accident . . . And I said, 'Do you remember whether you hit anybody that night?' He said, 'I might have hit a dog, or animal, I don't know what it was. I told him I was the one that was hit by his truck. . . . He said he didn't know anything about it; he admitted he was on that road that night, about that particular time . . . That he may have hit something on the road, he may have hit an animal, he didn't know what it was, but he kept right on going."

In view of all this testimony the contention that there is no evidence identifying the defendant with the accident cannot be seriously entertained.

The roughness and narrowness of the road, the size and shape of the body of the truck, and the fact that the easterly rut "was on the edge of the road" constituted a menace to pedestrians which the defendant could not entirely ignore. His speed and the fact that he was driving close to the Gosselin car were circumstances to be considered on the question of his care. *Howe* v. *Company, ante* 122. The following is quoted from his cross-examination: "Q. You were looking straight in front, and not at the side at all? Is that right? A. Yes, sir. Q. You knew that was a rough road? A. Yes, sir. Q. There

were rocks in there? A. Yes, sir. . . . Q. You were familiar with the road? A. Yes, sir. . . . Q. It is to be expected people might be walking along the side of the road in the night? A. Yes, I suppose that is so. Q. You are supposed to keep a lookout, aren't you? A. Yes, sir. Q. Well, now, were you looking for people that night, as you drove along there? A. No, sir."

"Evidence of the defendant's disregard of the safety of pedestrians whose possible presence he realized justified the inference that he was careless." *Golej* v. *Varjabedian*, 86 N. H. 244, 246. To the same effect, see *Clark* v. *Temple*, 86 N. H. 170, 171; *Carr* v. *Orrill*, 86 N. H. 226, 227; *Nicholaides* v. *Wallace*, 86 N. H. 465, 466.

The plaintiff was not guilty of contributory negligence as a matter of law merely because he was walking along the road (*Burns* v. *Coté*, 86 N. H. 167, 169) or because he stood so near the edge of the road as the cars went by (*Howe* v. *Company, ante,* 122). The question was not whether he took every possible precaution to avoid the accident but whether he did what the average person would have done under like circumstances. Obviously that question was for the jury. *Racette* v. *Company,* 85 N. H. 171, 172, and cases cited.

There is nothing in the record to indicate that the presiding justice erred in denying the defendant's motion to set the verdict aside on the three grounds considered. *Bennett* v. *Larose,* 82 N. H. 443. All exceptions are accordingly overruled, but since the trial court has still to pass upon the fourth ground of the motion, the order is

*Case discharged.*

All concurred.