HELEN L. HALLEY *v.* CLARA J. BROWN.

2

*Sheehan & Phinney* and *Arthur A. Greene, Jr.* (*Mr. Greene* orally), for the plaintiff.

*McLane, Davis & Carleton* (*Mr. John R. McLane, Jr.*, orally), for the defendant.

MARBLE, J.   The scene of the accident is concisely described in the defendant's brief.   This description is substantially as follows.

The shore line at North Hampton Beach opposite the site of the accident runs approximately north and south.   West of the ocean is the beach; west of the beach is a sea wall with steps leading up from the beach to the land above; west of the sea wall is a sidewalk ten feet in width and separated from the parking area by a curbstone; west of the sidewalk is the parking area, which slopes slightly to the west and is marked with yellow diagonal parking lines running in a northeast-southwest direction.   This parking area is tarred and is fifty to sixty feet in width and about one mile in length. West of and adjacent to the parking area is the public highway known as Ocean Boulevard.   This highway is twenty-four feet wide, thus making a continuous paved area from seventy-four feet to eighty-four feet in width measuring from the westerly edge of the public highway to the curbstone at the easterly edge of the parking area.

On the afternoon of the accident the defendant, who lived at Hampton Falls, took her three children to North Hampton Beach. When ready to return home, she backed her car out of the parking space and collided with the bicycle on which the plaintiff was riding. There was evidence that she realized "that there might be somebody on a bicycle riding in a northerly direction in back" of where her car was parked; that her view to the south was obstructed by another parked car; that she did not request her children, two of whom were on the back seat, to keep a lookout, and that she

"backed out suddenly" without sounding the horn of her car or giving any other warning.

The plaintiff and three companions were riding northward from Hampton Beach toward Rye on bicycles in single file about three or four feet west of the line of parked cars. The plaintiff testified: "I was riding along slowly and I was bearing in mind the fact that there were cars parked, but I had to keep my eye on the road ahead of me some and suddenly this car backed out and the right rear end of it hit the wheel of my bike. . . . I was thrown over the handlebars. . . . It just backed out suddenly . . . and without any warning and I could not do anything to prevent it. . . . I tried to watch to see that no one was backing out."

On the foregoing evidence the jury might properly find that the defendant was negligent and that her negligence caused the plaintiff's injuries. *Golej* v. *Varjabedian*, 86 N. H. 244, 246. Nor does the evidence compel the conclusion that the plaintiff was guilty of contributory fault. There is no claim that she was violating any provision of section 12 of chapter 90 of the Public Laws. She took some care for her own safety. Whether she did all that the average person would have done under like circumstances was a question of fact for the jury. *Dorrien* v. *Sirois*, 87 N. H. 144, 147. It follows that the motions for a nonsuit and directed verdict were correctly denied.

The defendant excepted "to the persistence" with which plaintiff's counsel asked a certain question relating to damages when the Presiding Justice had "ruled it out at least twice." In neither instance was the question answered. At the conclusion of the evidence the defendant "moved for a mistrial because of the prejudice" occasioned by the conduct of counsel in asking the question. The denial of this motion included an implied finding of fact that the defendant had not been prejudiced by the alleged misconduct. *Lavigne* v. *Lavigne*, 80 N. H. 559. The exception to the denial of the motion presents no question of law. *State* v. *Danforth*, 73 N. H. 215, 221.

In explanation of the plaintiff's reason for riding in the parking area her counsel said in his argument to the jury: "What would you think of a girl in the middle of Ocean Boulevard, the traffic coming in both directions, riding a bicycle?" Defendant's counsel excepted "to that statement, traffic coming in both directions." It is true that the plaintiff testified that there was little traffic on the boulevard at the precise moment when the accident occurred.

But she also testified that the traffic was heavy when she left Hampton Beach and that as she "rode along there was traffic going both ways spasmodically." Plaintiff's counsel merely suggested in interrogative form that the plaintiff was justified in riding where she did because of traffic conditions. In view of the evidence the suggestion, as made, was not an improper one.

Plaintiff's counsel argued, subject to exception, that if the defendant had "sounded her horn" the plaintiff "could have heard it and the accident would not have occurred." The fact that the defendant was under no statutory obligation to sound her horn did not absolve her from the duty of so doing if ordinary care required it. *Dowse* v. *Railroad*, 91 N. H. 419. The plaintiff was riding slowly and it was a legitimate inference from the evidence that she would have heard and heeded such a signal if given.

The plaintiff testified: "There were some children in the car, one of them said to me, she rode down with us to the doctor, and she expressed her sympathy and said that she had seen me." No exception was taken to this testimony, and it is evident that defendant's counsel misunderstood what the plaintiff had said, for in his cross-examination he asked several questions based on the assumption that the plaintiff had testified that it was the defendant who had admitted seeing her.

During the course of his argument to the jury plaintiff's counsel, commenting on the plaintiff's care, asserted: "She could have asked her children, one of them was eleven years old at the time, she could have asked one of the children to look out the side window and I think there's some testimony in this case . . . that one of them did see Miss Halley before the accident." Thereupon the defendant excepted, and after some discussion with the court as to the existence of the evidence in question, plaintiff's counsel continued: "I'll leave it to you gentlemen to your recollection and your judgment that it was brought out in direct examination that one of these children that was with Mrs. Brown said that they had seen Miss Halley. Not only on direct, on cross-examination." The defendant excepted "to that statement," and the Presiding Justice remarked: "I still don't remember any such statement. You will have to take your chance."

It is immaterial that the testimony to which counsel referred was hearsay. Since no objection was made to its admission, it could properly "be considered and given its logical probative effect." *Barlow* v. *Verrill*, 88 N. H. 25, 28. See also *Janus* v. *Akstin*, 91 N. H. 373.

No claim is made that prejudice resulted merely because of the statement that the testimony had been given on cross-examination. It was contended at the trial and it is the contention here, as expressed in the defendant's brief, that plaintiff's counsel made a serious "assertion of testimony which was not in the case at all."

*Judgment on the verdict.*

BURQUE, J., did not sit: the others concurred.