ADOLPH KRESHA, APPELLANT, V. RAYMOND L. KRESHA, APPELLEE.

344 N.W.2d 906

Filed February 3, 1984. No. 82-754.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Barlow, Johnson, DeMars & Flodman, for appellee.

WHITE and CAPORALE, JJ., and BRODKEY, J., Retired, and BLUE, D.J., and COLWELL, D.J., Retired.

BRODKEY, J., Retired.

Plaintiff below, Adolph Kresha, appeals to this court from the verdict of the jury and judgment entered thereon by the district court for Butler County in favor of the defendant, Raymond L. Kresha, in an action brought to recover damages for injuries sustained when the defendant, Adolph's son, allegedly backed into him with a pickup truck. The case was submitted to the jury on the sole issue of the negligence of the defendant, the contributory negligence of the plaintiff not having been submitted to the jury, although pled as a defense in the action.

In his brief on appeal to this court, the plaintiff makes numerous assignments of error which he con-

tends entitle him to a reversal of the judgment in favor of the defendant. The principal issue involved in this appeal is whether the court erred in submitting the case to the jury on improper instructions. The plaintiff also alleges that the court erred in overruling his motion in limine; in not sustaining his motion for a directed verdict of liability against the defendant; and in refusing to admit evidence of the defendant's liability insurance.

By way of background the record reveals that the incident giving rise to this lawsuit occurred in the middle of a field on the farm operated by the defendant, Raymond Kresha (also known as Larry), who is the son of the plaintiff. It appears that Adolph had stopped by the farm that morning to obtain a sample of grain from a farm truck located in the field in question. He testified that he observed Raymond driving onto the field and followed him in his truck. He parked his truck approximately 15 feet north of the grain truck previously referred to.

Raymond testified that he saw his father follow him into the field, and thought that he was going to get a grain sample from the truck. He then decided to back his truck up to the grain truck so that his father could use the back of the pickup as a platform to aid him in reaching the sample. He further testified that as he began to back his truck, he observed his father walking around the front of the grain truck, and also saw his father looking at him. He stated that he backed his truck diagonally across the furrows of the field at approximately 4 miles per hour. When he was 10 to 15 feet from the truck, he looked into his rearview mirror and saw his father standing near it and looking at him. He slowed his pickup by taking his foot off the gas pedal, and then put on the brake and was "practically stopped" before the accident occurred. He testified that, despite his use of the brakes, the pickup slid down the last furrow next to the truck and into the side of the grain truck. Raymond admits that he does not

know what his father did while the pickup moved the last 10 feet, and further admitted that he did not have Adolph in view the entire time that he was backing up.

Adolph's testimony was that he had climbed onto the grain truck and collected a sample in a cup, and then began to climb down. He stated that he heard a motor running, looked to the north, and for the first time saw Raymond's truck backing toward him, with the wheels spinning, about 17 feet away. Whereupon, he got as close to the cab of the grain truck as he could. He indicated that the left rear of the pickup struck him, and then pulled forward. He testified that he fell over and felt terrific pain in his legs, head, arm, and shoulder.

The principal issue in this case is whether the trial court improperly instructed the jury on the issues presented, as contended by the plaintiff. Plaintiff argues that the instruction on lookout and control was incomplete and therefore erroneous, and also argues that certain requested instructions were improperly refused.

The law is well settled that in determining the sufficiency of jury instructions on appeal to this court, such instructions are to be read as a whole; and when they fairly submit the case and the jury could not have been misled, there is no prejudicial error. *Duling v. Berryman*, 193 Neb. 409, 227 N.W.2d 584 (1975). We have also held that it is not error for the court to refuse a request for additional instructions where it has, on its own motion, fairly and fully instructed the jury on a party's theory of the case. *Baumann v. Hutchinson*, 124 Neb. 188, 245 N.W. 596 (1932).

To determine whether the instructions given by the trial court in this case were sufficient, it is first necessary that we determine what law applies to the operator of a motor vehicle on private property, or, specifically, in the middle of a farm field. The first question that presents itself, therefore, is whether

the statutory rules of the road in Nebraska are applicable. It is clear that they are not. Neb. Rev. Stat. § 39-603 (Reissue 1978) specifically provides in part: "The provisions of sections 39-601 to 39-6,122 relating to operation of vehicles refer exclusively to operation of vehicles upon highways except where a different place is specifically referred to in a given section . . . ." See, also, *Bassinger v. Agnew*, 206 Neb. 1, 290 N.W.2d 793 (1980); *Johns v. Glidden*, 173 Neb. 732, 114 N.W.2d 767 (1962). In the absence of statutory regulation we must therefore ask what law is applicable to such situations. It is clear that in that event the common law applies. See, Comment to NJI 7.01; *Bassinger v. Agnew, supra*; *Johns v. Glidden, supra*; *Anderson v. Wilcox*, 189 N.W.2d 541 (Iowa 1971).

The next question that logically presents itself is, How do we determine what the common law is? This question is answered in *Whitehorn v. Dickerson*, 419 S.W.2d 713 (Mo. App. 1967), in which that court stated at 717: "Though it is said that the common law imports a system of unwritten law, not evidenced by statute, but by tradition and the opinions and judgments of the sages of the law . . . the common law is inseparably identified with the decisions of the courts and can be determined only from such decisions in former cases bearing upon the subject under inquiry. Musser v. Musser, 281 Mo. 649, 656-660, 221 S.W. 46, 47-48(2)." In *Whitehorn* the court also held that absent controlling decisions from state courts, precedents in other jurisdictions become persuasive.

The common-law duty of a driver backing his vehicle on private property was considered and discussed in *Ybarra v. Wassenmiller*, 206 Neb. 164, 291 N.W.2d 725 (1980), which case involved an accident occurring when a camper-trailer was backing up in the parking lot of a bank and collided with a bank guard. In that case this court applied the rule that the driver of an automobile must exercise ordinary

care in backing his machine, so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured. Likewise, in *Boardman v. McNeff*, 177 Neb. 534, 129 N.W.2d 457 (1964), which was a farm accident case, the court pointed out that the defendant had a duty to use due care in the control and operation of his tractor, the court stating at 539-40, 129 N.W.2d at 461: "The negligence which was alleged related to the defendant's control and operation of the tractor. The defendant knew that the plaintiff was present. There was evidence from which the jury could find that the defendant knew that the plaintiff had stepped between the disk and the pickup and was unfastening the chain. Under such circumstances it was the duty of the defendant to use due care in the control and operation of the tractor to avoid injuring the plaintiff."

The measure of care required of the operator of a motor vehicle in an open field may well be different from that required of such operator when driving his vehicle upon a road or highway. In *Bennett v. Young*, 266 N.C. 164, 171, 145 S.E.2d 853, 859 (1966), that court stated: "Of course, one driving a motor vehicle in an open field, with no reason to suppose any other person is nearby, is not to be held to the same degree of vigilance in maintaining a lookout, whether proceeding forward or backward, as is one driving upon a heavily traveled highway. But where the motorist has reason to believe that any pedestrians or other vehicles may be in his intended path, he must exercise for their safety the care which a reasonable man would use under the same circumstances, even though he be driving upon private property."

The general law is well summarized in 60A C.J.S. *Motor Vehicles* § 349(1)(b) at 468 (1969), as follows: "[A]n operator, in backing a vehicle at places other than a public street or highway, must exercise ordinary care. . . . [T]he situation may require the

keeping of a lookout, and, under some circumstances, an effective warning signal of the intention to back. . . . [G]enerally speaking, the backing does not constitute negligence where the operator does everything that a reasonably prudent person can do to avoid injury to others."

We now examine the instructions given by the trial judge to the jury in this case. In its charge to the jury the trial court gave the jury the definition of "negligence" as set out in NJI 3.02, as follows: "Negligence is doing something which an ordinary, prudent person would not have done under similar circumstances, or failing to do something which an ordinary, prudent person would have done under similar circumstances." The court also, in its instruction No. 8, set out the duty owed by the defendant in the operation of his truck, as follows: "It is the duty of the driver of a motor vehicle, in operating the same, to keep such diligent watch and lookout and have his vehicle under such reasonable control as will at all times enable him to avoid an accident.

" 'Reasonable control,' as used in this instruction, requires that drivers of motor vehicles take into consideration such factors as the speed of their vehicle, and all other factors affecting driving conditions that may have been developed by the evidence.

"A driver must use ordinary care and such senses of sight and hearing and such other instruments as are at his command to avoid an accident, and it is the duty of drivers to look and see that which is within the limits of danger."

The instruction above set out is basically the first three paragraphs of NJI 7.03, dealing with "Lookout and Reasonable Control." Some modification was made to the instruction by the court in order to adapt the wording to the "off-the-highway" situation that was involved in this case.

Among the plaintiff's requested instructions was a modified version of the "lookout" instruction, which

included the final NJI paragraph which had been deleted by the court in the instructions prepared by it: "The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully at a place not on a street or highway or he is driving where he has a right to be. He must keep a lookout in the direction of travel or in the direction from which others may be expected to approach and he is bound to take notice of the driving surface, to observe the conditions along the way and to know what is in the path of his vehicle for a reasonable distance."

Plaintiff argues that this paragraph should have been included in the instructions to the jury because the jury must be informed in what direction the driver had a duty to look. While it is true that the NJI instructions shall be given where applicable, *Jones v. Foutch*, 203 Neb. 246, 278 N.W.2d 572 (1979), we find no prejudicial error in the court's failure to include the final paragraph as set out above. It must be remembered that the jury was instructed of the duty of the defendant to "keep such diligent watch and lookout" and to "look and see that which is within the limits of danger." In the context of the case, since the driver was backing up when the accident occurred, and the only area of danger was behind him, we cannot conclude that the jury was misled with regard to the direction in which the driver should have looked. We conclude that the trial court, in its instruction, properly gave the common-law duty imposed upon a driver while backing on private property, and the substance of the missing paragraph was, we believe, adequately covered in the instruction as given, and no prejudice resulted to the plaintiff.

Plaintiff also argues that it was error for the court to omit the portion of the "lookout" instruction which requires a driver to take notice of the condition of the driving surface. We believe that that duty was adequately covered by that part of the

instruction requiring the driver to consider "all other factors affecting driving conditions that may have been developed by the evidence." We do not believe the jury could have been misled by the instruction. We find the language of the court in *Patterson v. Edgerton Sand & Gravel Co.*, 227 Wis. 11, 277 N.W. 636 (1938), to be persuasive. In that case the court stated at 18, 277 N.W. at 639: "[F]urthermore, in so far as the private character of the premises was involved herein, the jury was rightly and sufficiently instructed that 'the questions of negligence as applied to Wescott, the driver, are not covered by the law of the road or the rules applying to a public highway; but his actions are to be tested according to the ordinary standards of prudence and care which persons ordinarily exercise when driving a truck or anything of the kind upon private grounds.' That instruction was applicable and ample in respect to the questions submitted to the jury as to negligence on the part of Wescott in failing to keep a proper lookout, and in failing to give a proper signal of his intention to back the truck."

We also comment briefly on plaintiff's other requested instructions. One of the instructions requested was as follows: "The law does not forbid the backing of a motor vehicle, and to do so does not constitute negligence, but the driver must exercise ordinary care in backing his machine so as not to injure others by the operation, and his duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured.

"It is his positive duty to look backward for approaching vehicles or pedestrians and to give them timely warning of his intention to back, when a reasonable necessity for it exists.

"He must not only look backward when he commences his operation, but he must continue to look backward in order that he may not collide with or injure those lawfully using the premises."

The foregoing requested instruction is a modifica-

tion of a principle set out in *Chew v. Coffin*, 144 Neb. 170, 12 N.W.2d 839 (1944), in which case it was applied to a vehicle backing from a driveway into a street. We have since held that while it is the duty of the driver to keep a lookout in the direction of anticipated danger, he cannot be expected to maintain a constant lookout in one direction. *Colton v. Benes*, 176 Neb. 483, 126 N.W.2d 652 (1964); *Gross v. Johnson*, 174 Neb. 273, 117 N.W.2d 534 (1962). It would therefore appear that the third paragraph of the offered instruction was inapplicable and an incorrect statement of the law as it applies to this case. The first two paragraphs of the offered instruction, while accurate, are, we believe, covered in substance by the court's instructions on negligence, lookout, and control. There was no prejudice in the refusal of the court to give the requested instruction.

Plaintiff also requested an instruction to the effect that the statutes of Nebraska require the installation of a horn on a vehicle and that the law contemplates an opportune use of the horn to apprise pedestrians of the approach of a vehicle.

As has previously been pointed out, the statutory rules of the road are generally inapplicable to private property. However, notwithstanding, this court has held that in backing an automobile onto a street or highway, a driver must give a signal of his intention to back *when a reasonable necessity for it exists*. *Fries v. Goldsby*, 163 Neb. 424, 80 N.W.2d 171 (1956); *Taulborg v. Andresen*, 119 Neb. 273, 228 N.W. 528 (1930). In backing a vehicle the operator's duty to sound a horn is not an absolute one, but depends upon the circumstances at the time. *Ybarra v. Wassenmiller*, 206 Neb. 164, 291 N.W.2d 725 (1980).

We conclude that in instructing the jury of the defendant's duty to use such instruments as are at his control, and by instructing on the definition of negligence, the trial court sufficiently apprised the jury of the driver's duty. It was not necessary, nor would it have been proper, to give the instruction

discussing a specific duty to sound a horn. See, *Johnson v. Haddix*, 522 S.W.2d 859 (Ky. App. 1975); *Halley v. Brown*, 92 N.H. 1, 24 A.2d 267 (1942).

We have examined the remaining instructions requested by the plaintiff, most of which were not discussed in his brief, and we find that the court properly instructed on every issue that was necessary to submit to the jury. The offered instructions were either inapplicable to the facts involved in this case or were covered in substance by the court's other instructions, keeping in mind that all that was necessary to instruct upon was the common-law rule of the duty to use ordinary care, all as previously discussed in this opinion.

We briefly comment upon the other assignments of error made by the plaintiff in this case. He complains that the trial court improperly overruled a motion in limine filed by him. Plaintiff had sought to prevent the defendant from mentioning contemporaneous litigation involving the parties, and other incidents, tending to show hostility or hard feelings between the two. Defendant wished to present such evidence to impeach the plaintiff. The court received the evidence on the theory that it affected the credibility of other witnesses, and also had a bearing on the determination of damages. The law is well settled that considerable latitude is allowed in eliciting from a witness, or in attempting to elicit and to establish, bias, hostility, or interest of the witness bearing upon his credibility. *Smith v. Hornkohl*, 166 Neb. 702, 90 N.W.2d 347 (1958).

A party has a right to cross-examine a witness with regard to an interest which affects credibility. *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983). The evidence of the other litigation involving the family members and the relationship between the various family members were relevant to establish bias and hostility toward one family member and against another. It was properly admitted.

Plaintiff also assigns as error the court's refusal to permit him to prove that defendant had liability insurance. Plaintiff claimed that the evidence would negate the inference that he was acting out of malice in filing the suit, and would rehabilitate the witness' testimony.

It is the established law of this jurisdiction that where the fact of insurance is relevant to some issue in the case, it cannot properly be excluded, but where not relevant to any such issue, evidence of the existence of insurance coverage is inadmissible. *Swartz v. Peterson*, 199 Neb. 171, 256 N.W.2d 681 (1977). See, also, Neb. Rev. Stat. § 27-411 (Reissue 1979). Plaintiff's malice, or lack of malice, in filing the lawsuit is irrelevant to the issues of negligence or damages. The purpose of offering the evidence of liability insurance was merely to indicate that defendant may not have had to pay any judgment rendered against him. However, whether relevant or irrelevant, we believe the court properly exercised its discretion under Neb. Rev. Stat. § 27-403 (Reissue 1979), which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Finally, plaintiff contends that the court erred in refusing to direct a verdict of liability against the defendant.

The rule is well established that where different minds may draw different conclusions from the facts proved, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury to be determined. *Boardman v. McNeff*, 177 Neb. 534, 129 N.W.2d 457 (1964). In considering the propriety of a directed verdict, the trial court must resolve every controverted fact in favor of the party against whom the verdict is sought and give that party the benefit of every inference which can reasonably be

drawn. *Stephen v. City of Lincoln*, 209 Neb. 792, 311 N.W.2d 889 (1981). Both sides presented evidence as to how the accident occurred and where the plaintiff was located at various times. Some of the evidence was in dispute. Considering the evidence presented and giving the defendant the benefit of all favorable inferences, we cannot say that the trial court was in error when it refused to direct a verdict of liability in favor of the plaintiff. Reasonable minds could differ as to whether an inference of negligence should be drawn, and, therefore, the issue of liability was a question to be determined by the jury.

In view of what we have stated above, we conclude that the verdict of the jury and judgment of the court entered thereon were not clearly wrong and therefore must be affirmed.

AFFIRMED.