401 N.W.2d 495 (1987)
224 Neb. 792
Henry STEED and Steed Brothers Construction Co., Inc., Appellants and Cross-Appellees,
v.
OAK RIDGE EQUESTRIAN CENTER, INC., et al., Appellees and Cross-Appellants.
No. 85-372.
Supreme Court of Nebraska.
February 27, 1987.
*496 Brian R. Watkins and Richard Scott of Watkins & Scott, Lincoln, for appellants and cross-appellees.
Martin A. Cannon of Matthews & Cannon, P.C., Omaha, for appellees and cross-appellants.
KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.
BOSLAUGH, Justice.
This was an action for damages for an alleged conspiracy by the defendants to ruin the business and profits of the plaintiffs, Henry Steed and Steed Brothers Construction Co., Inc.
Steed Brothers is in the business of wrecking buildings. To operate its business successfully it needs a landfill site where it can dispose of the debris and rubble from the buildings it demolishes.
The defendant Robert C. Luikart formerly operated the Oak Ridge Equestrian Center on a 53-acre irregular tract of land just north of Omaha, Nebraska. The land was wooded and had several large ravines upon the property. On November 1, 1979, Steed Brothers entered into a lease agreement with Oak Ridge for the use of a portion of the Oak Ridge property as a landfill. In June of 1980 Oak Ridge's attorney *497 advised Steed Brothers to cease dumping on the property. In May of 1981 Oak Ridge commenced an action against Steed Brothers to enjoin the latter from continuing to dump on the property. A temporary restraining order was issued by the court, and dumping on the property was halted.
The matter came on for hearing July 7, 1981. During the hearing the parties entered into a settlement agreement which was dictated into the record, the alleged breach of which is the basis of this case. The settlement agreement required Steed Brothers to remove an earthen "ramp" from the Oak Ridge property within 7 days, at which time the restraining order would be dissolved. Steed Brothers also agreed to seed an arena located on the property. The parties agreed to meet on the property later that day "to stake the property for the removal of the ramp and for the boundaries of the land to be purchased."
With regard to the land to be purchased by Steed Brothers, the agreement provided in part that
the land will be described in a survey which will be completed within a reasonable time hereafter to allow for the execution of the purchase agreement on or before August 1, 1981.
Under the terms of the purchase agreement the defendant will give the plaintiff a $10,000 down payment and will assume the land contract or mortgage of the plaintiff now existing against this property, and the defendant will make his payment through an escrow agent to ensure that the land contract or mortgage is paid in full.
. . . .
The parties further agree that the survey to be completed of the property will be completed within a reasonable time and the cost of such survey will be split equally between the parties.
A few days after the settlement agreement was reached, the parties met at the property and set the boundaries for the survey. At that time the parties agreed to wait until fall to have the property surveyed, to avoid additional expenses caused by the dense foliage in the area. Steed Brothers removed the ramp on the property, and the restraining order was dissolved. Steed Brothers then resumed dumping at the site but did not seed the arena.
On August 5, 1981, Steed Brothers' then attorney, William Dittrick, wrote to Oak Ridge's then attorney, Stephen Gerdes, and requested the latter to obtain the proper consents for assumption of the mortgage on the property, requested that the required downpayment of $10,000 be placed in escrow to pay a substantial payment due on the property in 1982, and commented that he assumed the purchase agreement and other necessary agreements were being prepared. Subsequently, in telephone conversations between Oak Ridge's attorneys and Steed Brothers' attorney, which occurred between August 5 and 28, the latter was informed the necessary consents had been obtained and the parties would proceed. On August 28, 1981, Dittrick again wrote to one of Oak Ridge's attorneys, to confirm an earlier telephone conversation. The letter stated that it was Dittrick's understanding that all necessary consents had been obtained and requested the attorney for Oak Ridge, Martin Cannon, to prepare the purchase agreement as soon as possible so that the matter could be finalized and the litigation closed.
The next correspondence which appears in the record is dated October 22, 1981, wherein Steed Brothers was notified the entire tract of land owned by Oak Ridge, including the portion Steed Brothers had agreed to buy, had been sold to Anderson Excavating and Wrecking Co., a competitor of Steed Brothers. The letter was written by Martin Cannon, Oak Ridge's attorney, on behalf of the Anderson Co. In addition to informing Steed Brothers of the sale, the letter stated that Steed Brothers had violated the terms of its lease and the terms of the settlement agreement and, therefore, should find another landfill site. The Anderson Co. offered to allow Steed Brothers to use the site for a "reasonable period" upon proof of insurance and a conference *498 with Cannon to set the terms of the usage. Steed Brothers continued to use the property until June 1982.
On September 15, 1982, Henry Steed and Steed Brothers filed this action, alleging that Oak Ridge and Robert Luikart had conspired with the Anderson Co. and Virgil Anderson, the president of the Anderson Co., to breach the settlement agreement, thereby preventing Steed Brothers from using the landfill and damaging its business and profits. The plaintiffs alleged the breach of the settlement agreement was
a direct result of a deliberate conspiracy between the defendants for the purpose of ruining the business and profits of the plaintiff herein and permanently damaged plaintiff's ability to compete by denying the plaintiff the use of the proposed land site that was the subject of the in court settlement.
The plaintiff's sought to recover damages for lost profits and the loss of future business and profits, and special damages of $150,000.
The defendants' answer, substantially, was a general denial.
At the close of all of the evidence the trial court dismissed the case as to Henry Steed and Virgil Anderson. The jury returned a verdict in favor of Oak Ridge, Robert Luikart, and the Anderson Co. This appeal followed.
The defendants assert a cross-appeal, contending that their motion for a directed verdict at the close of the evidence should have been granted. They contend that the plaintiffs failed to establish a prima facie case of conspiracy against Oak Ridge, Luikart, and the Anderson Co., because all of Steed Brothers' rights under the lease and settlement agreement, as well as all of Oak Ridge's defenses, were unchanged by the sale to the Anderson Co.
The testimony at trial was conflicting. Luikart testified that he had negotiated with the Anderson Co. in 1977 or 1978 for the sale of his property, but the negotiations had lapsed until late September or early October of 1981. Luikart admitted he had a "legal obligation" to sell Henry Steed the land by August 1, but when that date had passed and Steed Brothers had not fulfilled its end of the bargain, he felt the agreement was null and void. Luikart then testified that before the sale he called Steed Brothers and offered it the entire tract for the same terms as he had offered the Anderson Co. After Steed Brothers refused the offer, Luikart sold the property to the Anderson Co. Luikart testified that he negotiated the sale to the Anderson Co. through its then vice president, Don Reynolds. He also testified that while he had agreed to defer the survey of the property, he had not agreed to defer the balance of the agreement, including the downpayment and mortgage payments Steed Brothers had agreed to pay.
Virgil Anderson testified, by way of deposition, that he believed negotiations for the sale of the property began in approximately January of 1981. He testified that Don Reynolds had negotiated the sale on behalf of the Anderson Co. and that he had been made aware of the settlement agreement and understood Steed Brothers had a right to purchase the property by a certain date. He further testified the parties waited until after that date to close the sale. It was his understanding that if Steed Brothers failed to purchase the property by that date, its lease became void.
Henry Steed testified that Luikart had offered him the right to purchase the entire tract on the same terms offered to the Anderson Co. Steed admitted that he had not made the required $10,000 downpayment nor made any mortgage payments as required by the agreement. He stated that he had not made the payments because he had not signed the purchase agreement, yet conceded that Luikart had made some demand for the payments and had not expressly agreed to postpone those payments until the survey was completed and the purchase agreement signed.
There was also testimony from Luikart and Anderson that Steed Brothers had violated the terms of its landfill permit by improperly dumping material for which it had no permit, after the sale to the Anderson Co. Anderson testified it was the improper use of the site which ultimately *499 led to the termination of the use of the landfill by Steed Brothers.
The plaintiffs have made three assignments of error.
The first two assignments of error concern the trial court's refusal to give two instructions offered by the plaintiffs. Plaintiffs first contend the trial court erred in refusing to instruct the jury that the settlement agreement bound the parties as a matter of law. Plaintiffs next contend the trial court erred in refusing to give the following instruction: "[A]ny Defendant who intentionally or improperly interfered with or conspired to interfere with the in court settlement agreement was liable to the Plaintiffs-Appellants for damages."
In determining the sufficiency of jury instructions on appeal, this court will read the instructions as a whole, and when they fairly submit the case and the jury could not have been misled, there is no prejudicial error. Kresha v. Kresha, 216 Neb. 377, 344 N.W.2d 906 (1984); Duling v. Berryman, 193 Neb. 409, 227 N.W.2d 584 (1975). It is not error for the trial court to refuse a requested instruction when it has, on its own motion, "fairly and fully instructed the jury on a party's theory of the case." Kresha, supra at 380, 344 N.W.2d at 909. See, also, Baumann v. Hutchinson, 124 Neb. 188, 245 N.W. 596 (1932).
Plaintiffs contend the trial court was required to instruct the jury that the settlement agreement was binding as a matter of law in view of Neb.Rev.Stat. § 7-107 (Reissue 1983), the defendants' admissions, the defendants' testimony at trial that no material disagreement existed as to the legal description or survey, and the plaintiffs' counsel's testimony that he was never informed prior to the sale to Anderson that any problem existed with regard to the settlement agreement. The plaintiffs argue the trial court misled the jury by instructing it as to the intent of the parties in making the settlement and as to the interpretation of the settlement agreement.
In instruction No. 2 the trial court instructed the jury that the plaintiffs alleged the parties had entered into an in-court settlement agreement to settle a prior lawsuit between them. The instruction stated that Oak Ridge had agreed to sell the property in dispute to the plaintiffs and that the plaintiffs alleged they had fully performed under the agreement, but that Oak Ridge and Luikart had not. The instruction then set out plaintiffs' allegations concerning the defendants' alleged conspiracy to damage the plaintiffs. In instruction No. 3 the court set out the defendants' answer to the petition, including the defendants' admission "that on or about August 28, 1981, no material disagreements then existed between the parties, and the plaintiff was merely waiting for preparation of such papers to carry out the intent of the parties in the settlement agreement." The instruction further stated, "The defendants further admit that defendant Oak Ridge refused to prepare the purchase agreement, land contract and consents for the sale of the land to effectuate the settlement of the parties, even though the preparation of such documents was their sole responsibility."
In instruction No. 5 the court instructed the jury the plaintiff Steed Brothers had the burden to prove
[t]hat in 1981, the defendants, or some of them, entered into a conspiracy with the purpose or object of denying the plaintiff the use of the proposed land site that was the subject of the settlement agreement evidenced by Exhibit 1 and thereby to deny the plaintiff its business profits from the use of said site.
Further, in instruction No. 12 the court stated, "The settlement agreement evidence [sic] by Exhibit 1 was reached during hearings in this court to determine whether that temporary restraining order should continue or be dissolved."
The existence or binding nature of the settlement agreement was not an issue at the trial. Instead, the testimony centered on whether the parties had performed as required by the agreement. The instructions, read as a whole, adequately instructed the jury as to the existence of the settlement agreement and its possible construction. Because the record shows the plaintiffs were not prejudiced by the *500 omission of this instruction, plaintiffs' first assignment of error is overruled.
The plaintiffs next contend the trial court erred in failing to instruct the jury that any defendant who tortiously interfered with the plaintiffs' business was liable for any damages caused thereby. Plaintiffs appear to be arguing that the trial court should have given an instruction for an alternative ground of liability; conspiracy to interfere with the plaintiffs' business or tortious interference by any defendant. This contention is also without merit.
The petition alleged only that the breach of the settlement agreement was the result of a conspiracy by the defendants to deny the plaintiffs the use of the land in question. There was no allegation that any one defendant tortiously interfered with any business right of the plaintiffs. In addition, the record discloses no evidence of tortious interference by any defendant, acting alone.
"`Jury instructions should be confined to the issues presented by the pleadings and supported by the evidence. Ordinarily, it is error to submit to the jury an issue which is not pleaded in the case.'" Bump v. Firemens Ins. Co., 221 Neb. 678, 690, 380 N.W.2d 268, 277 (1986) (quoting Simon v. Christie, 210 Neb. 600, 316 N.W.2d 303 (1982)). As this issue was not raised in the pleadings nor supported by the evidence, the trial court properly refused to give the requested instruction to the jury.
Plaintiffs' final assignment of error concerns the trial court's ruling that the deposition statements of Virgil Anderson were not admissible against Oak Ridge and Luikart. The trial court limited the applicability of Virgil Anderson's deposition testimony to the deponent and the Anderson Co. Plaintiffs contend this ruling was erroneous because a prima facie case of conspiracy had been proven at that point, and, therefore, the statements of Anderson were admissible against the other defendants as coconspirators. Plaintiffs contend the elements of a conspiracy were established by the testimony of William Dittrick, plaintiffs' first witness.
"The principal element of a conspiracy is an agreement or understanding between two or more persons to inflict a wrong against or injury upon another." Hahn & Hupf Constr. v. Highland Heights Nsg. Home, 222 Neb. 189, 194, 382 N.W.2d 607, 611 (1986). See, also, Davidson v. Simmons, 203 Neb. 804, 280 N.W.2d 645 (1979). It is necessary to prove the existence of at least an implied agreement, to establish a conspiracy. Morton Bldgs. of Neb., Inc. v. Morton Bldgs., Inc., 531 F.2d 910 (8th Cir.1976).
Although the trial court submitted the issue to the jury, the evidence as to a conspiracy was weak and circumstantial at best. The defendants conceded that the sale to the Anderson Co. was subject to whatever rights Steed Brothers had in the property, and contended that Steed Brothers lost its rights under the settlement agreement when it failed to perform.
At the close of all of the evidence, the court dismissed Anderson from the case. The record supports this dismissal because there was no evidence that Anderson, as an individual, conspired to interfere with Steed Brothers' purchase of the landfill site. Anderson was not personally involved in the negotiations for the sale of the property, and there was no evidence that he had instructed or authorized Don Reynolds, as vice president, to conspire with the other defendants to harm the plaintiffs. Anderson was not proven to be a coconspirator, so his statements were not admissible against Luikart and Oak Ridge under the coconspirator rule.
Since the judgment was in favor of the defendants, it is unnecessary to consider the cross-appeal.
The judgment of the district court is affirmed.
AFFIRMED.
CAPORALE, J., not participating.