Double Check Co. v. Goulds Pumps      CV-97-604-SD    03/09/98

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Double Check Company, Inc.

　　v.                              Civil No. 97-604-SD

Goulds Pumps, Inc.


**O R D E R**


　　In this civil action, plaintiff Double Check Company alleges wrongful conduct by Environamics Corporation ("Environamics"), a former wholly-owned subsidiary of Goulds Pumps, Inc.  The plaintiff alleges breach of contract (Count I), direct misrepresentation by Goulds and/or Environamics (Count II) and unfair and deceptive trade practices under New Hampshire Revised Statutes Annotated ("RSA") 358-A (Count III).  Double Check's suit alleges that Goulds Pumps pledged to work jointly with Environamics and use its clout in the pump industry to support Environamics' distributors with sales and sales contracts. Double Check further contends that Goulds Pumps is a joint venturer and/or a partner by estoppel with Environamics pursuant to RSA 304-A:16.  Goulds Pumps argues that it is institutionally independent from Environamics and therefore cannot be held liable for the actions of its subsidiary.

　　Presently before the court is the defendant's motion to dismiss Counts I through III for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) to which plaintiff objects.

## Background

The plaintiff, Double Check, is a successor in interest to Tri-State Equipment Co., Inc. Double Check and its predecessor are Missouri corporations headquartered in Kansas City, Missouri. Double Check sells, installs, and services commercial and industrial process pump equipment in and around Kansas City, Missouri. The defendant, Goulds Pumps, is a Delaware corporation headquartered in Seneca Falls, New York. Goulds Pumps manufactures and sells commercial and industrial process pumps nationally through a network of independent distributors and its own direct sales force. Environamics Corp. is a Delaware corporation. Environamics was a wholly-owned subsidiary of Goulds Pumps from 1993 until January 1996. Environamics manufactured and sold commercial and industrial pumps from its Hudson, New Hampshire, headquarters.

In 1994, Environamics offered Double Check the opportunity to become a distributor of a new line of pumps. Several factors induced Double Check to enter into a distributor agreement with Environamics. Double Check was favorably impressed by

2

Environamics association with Goulds Pumps, a leading company in the field. According to Environamics, the new pumps would be more durable than previous models and would last significantly longer. Environamics claimed that Goulds Pumps had performed tests that supported this claim. Environamics also assured Double Check that Goulds Pumps' sales force would assist Double Check with its sales of Environamics' pumps by providing contacts and introductions. Double Check also relied on Environamics' claim that Goulds' direct sales staff would sell the product and Double Check, as the distributor, would receive commissions on the pumps sold by Goulds in Double Check's assigned territory. Double Check claims to have relied upon these verbal assurances in making its decision to distribute Environamics' pumps. Double Check has also produced a letter signed by the vice president of Goulds Pumps that described a marketing approach similar to what Double Check claimed to have relied upon before signing the distributorship agreement. Double Check, however, did not receive the letter before entering into the agreement with Environamics.

Double Check entered into a distributor agreement with Environamics in December 1994. The agreement granted Double Check the exclusive right to sell Environamics' products in the defined territory of Missouri and Kansas. The distributor

3

agreement provided a sales quota for 1995, required Double Check to hire a specialist to sell Environamics' product exclusively, and provided a product return policy subject to a written approval by an Environamics senior manager and a fifteen percent restocking charge. Pursuant to the agreement, Double Check hired a specialist and sent him to Nashua, New Hampshire, for training at the Environamics Specialist School. Double Check alleges that it was induced to make its initial $100,000 purchase order by Environamics' assurances that Goulds Pumps had done a market study which supported a sales volume of between $400,000 and $650,000 in a calendar year. As it turns out, however, no market study existed. Even after purchasing $100,000 worth of Environamics' pumps and spending $60,000 for training and marketing, Double Check did not sell a single pump. Double Check contacted a Goulds Pumps distributor, RA Mueller, to inquire about the Environamics pump and was told that RA Mueller felt that Environamics had oversold the pump's capabilities. Further, a Maryland distributor told Double Check that a Goulds Pumps' representative questioned him on why he was referring to Environamics' pumps as Goulds Pumps' product.

Goulds Pumps severed its relationship with Environamics by January 1996 and transferred its share of Environamics' stock to Environamics' president and vice-president. Environamics

4

terminated the distributor agreement with Double Check in May 1996 and demanded payment on its outstanding product invoices. Double Check made repeated requests for authorized return or exchange of Environamics' product, which were denied. In his deposition, Environamics' president, Robert Rockwood, stated that Environamics had no return policy. Environamics brought suit against Double Check in New Hampshire for the amount of the unpaid invoices which the parties settled.

## Discussion

### 1. Standard of Review

When personal jurisdiction is contested, the plaintiff has the burden of proof to produce facts necessary to sustain jurisdiction over the defendant. See Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992); United States v. Arkwright, Inc., 690 F. Supp. 1133, 1138 (D.N.H. 1988). When the district court elects to dispose of a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it applies a prima facie standard. See Sweed v. Royal Grip Inc., No. 94-149-SD, 1994 WL 255525, at *3 (D.N.H. June 6, 1994) (citing United Elec. Workers v. 163 Pleasant Street, 987 F.2d 39, 43 (1st Cir. 1993)). "The prima facie showing . . . must be based on evidence of specific

5

facts set forth in the record." Boit, 967 F.2d at 675; see also Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 9 (1st. Cir. 1986). The plaintiff must go beyond the pleadings to make affirmative proof. Id. (citing, Chlebda v. H.E. Fortna & Bro. Inc., 609 F.2d 1022, 1024 (1st Cir, 1979)). It is the plaintiff's burden to demonstrate the existence of "every fact required to satisfy 'both the forum's long-arm statute and the Due Process Clause of the Constitution.'" Boit, 967 F.2d at 675, (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990)). Allegations of jurisdictional facts are construed in the plaintiff's favor. Buckley v. Bourdon, 682 F. Supp. 95, 98 (D.N.H. 1988) (citing, Kowalski, 787 F.2d at 9). "It has long been the rule in this circuit, however, that plaintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal juris-diction." Boit, 967 F.2d at 675.

For the reasons that follow, this court grants defendant's motion to dismiss for lack of personal jurisdiction.


2.   Personal Jurisdiction

When a court is presented with a personal jurisdiction challenge, it must engage in a two-part inquiry. First, "it is well established that in diversity cases, the district court's

6

personal jurisdiction over a non-resident defendant is governed by the forum's long-arm statute." Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertall v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993) (quoting Pizarro v. Hoteles Concorde Int'l, C.A., 907 F.2d 1256, 1258 (1st Cir. 1990) (quoting Manqual v. General Battery Corp., 710 F.2d 15, 19 (1st Cir. 1983))). See also Zenane, Inc. v. Tofer, 127 N.H. 366, 367, 499 A.2d 1347, 1348 (1985). New Hampshire's corporate long-arm statute, RSA 293-A:15.10 (supp. 1997), authorizes jurisdiction over foreign corporations to the full extent permitted by federal law. See McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994); see also Calypso Software Systems, Inc. v. DanaSoft Inc., No. CV-94-578-M slip op. at 10 (D.N.H. April 25, 1995) (citing, McClary, 856 F. Supp. at 55). New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution. See id. Therefore, in respect to non-resident corporate defendants, the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional require-ments of due process have been met. See McClary, 856 F. Supp. at 55; Calypso, slip op. at 12.

Due Process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the

forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see also Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984). The court may exercise two types of personal jurisdiction--general and specific. See Perkins v. American Honda Motor Company, No. CV-95-616-M slip op. at 18 (D.N.H. July 2, 1996). Both varieties of jurisdiction are premised upon the defendant's contacts with the forum state. General jurisdiction, however, allows the court to exercise jurisdiction even when the litigation is not directly founded on the defendant's forum contacts. To give rise to general jurisdiction, the defendants contacts must rise to the level of continuous and systematic activity in the forum state. See Helicopteros Nacionales de Colombia, 466 U.S. at 414-16. United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).

The First Circuit applies a tripartite test to determine if specific personal jurisdiction exists over a defendant. See United Elec. Workers, 960 F.2d at 1089. First, when the defendant has minimum contacts, the court must decide whether the claim underlying the litigation arises directly out of the defendant's forum state activities (relatedness test--contacts

8

with forum state must have caused the alleged harm). <u>Pritzker v. Yari</u>, 42 F.3d 53, 61 (1st Cir. 1994), <u>cert.</u> <u>denied</u>, 115 S. Ct. 1959 (1995). This test is a relatively flexible and relaxed standard. <u>Id</u>. The relatedness requirement "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." <u>Ticketmaster- New York Inc. v. Alioto</u>, 26 F.3d 201, 207 (1st Cir. 1994). This requirement ensures that the defendant will not be subject to specific personal jurisdiction unless the defendant's contacts with the forum state caused the alleged harm. <u>Id</u>.

Second, the court must decide whether the defendant's forum-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state. <u>See</u> <u>United Elec. Workers</u>, 960 F.2d at 1089. The First Circuit has identified "two cornerstones of purposeful availment." <u>Ticketmaster</u>, 26 F.3d at 207. The first cornerstone is foreseeability or whether the defendant's conduct and connection with the forum state is such that he or she should reasonably anticipate being haled into court there. <u>Id</u>. (citing <u>World Wide Volkswagen v. Woodson</u>, 444 U.S. 286, 297 (1980)). The second cornerstone is voluntariness because jurisdiction may not rest on the "unilateral activity of another party or third person." <u>Id</u>. (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).

9

Lastly, the court must decide whether the exercise of personal jurisdiction is reasonable in light of the "Gestalt" factors. United Elec. Workers, 960 F.2d at 1089; see also, World Wide Volkswagen, 444 U.S. at 297; Pritzker 42 F.3d at 61; Ticketmaster, 26 F.3d at 207. Thus, even when the suit arises out of the defendant's minimum contacts, the court may not exercise personal jurisdiction if to do so would be unreasonable. The Gestalt factors include (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. Ticketmaster, 26 F.3d at 209. See Asahi v. Superior Court of California, 480 U.S. 102, 113 (1986); Burger King, 471 U.S. at 477. The First Circuit has emphasized that the above factors allow defendants who demonstrate some kind of special or unusual burden to avoid suit in the forum. Friedman v. Cindylou Prince-Herbert, No. CV-96-253-B slip op. at 13 (D.N.H. August 28, 1996).

### A. General Jurisdiction

Double Check first argues that Goulds has sufficient New

10

Hampshire contacts to be subjected to general jurisdiction in New Hampshire. Double Checks argument is based on Goulds' statewide sale of products, the presence of an exclusive Goulds distributor in New Hampshire, Goulds' contact with Environamics distributors at training seminars held in New Hampshire, and Goulds' relationship with Environamics.

This court finds, however, that it cannot exercise general jurisdiction over Goulds Pumps. Goulds Pumps could not have foreseen being haled into court in New Hampshire just because it sells pumps nationally. See Asahi, 480 U.S. at 103 ("The 'substantial connection' between a defendant and the forum State necessary for a finding of minimum contacts must derive from an action purposely directed toward the forum State, and the mere placement of a product into the stream of commerce is not such an act. . . ."). Double Check did not allege operations, offices, employees, or advertising by Goulds Pumps that would support an assertion of general personal jurisdiction by this court. Goulds Pumps' alleged contacts with New Hampshire do not amount to unrelated "continuous and systematic" contacts which would warrant Goulds Pumps being haled into court here. See, e.g., Glater v. Eli Lilly & Co., 744 F.2d 213, 217 (1st Cir. 1984) (holding that in state advertising, eight sales representatives covering state, and sales to wholesale distributors in-state were

11

insufficient to support general jurisdiction).  Double Check has failed to show that Goulds Pumps has created continuing obligations with New Hampshire residents such that New Hampshire laws would benefit and protect its activities.

### b. Specific Jurisdiction

Double Check argues that this court may exercise specific jurisdiction over Goulds.  Double Check apparently relies on both Goulds' contacts with New Hampshire and Goulds' relationship with Environamics in asserting that the court can exercise jurisdiction over Goulds.  Thus, the court must determine whether Goulds' contacts with New Hampshire are sufficient to support jurisdiction.  If Goulds' individual contacts do not support jurisdiction, the court must determine whether Environamics' contacts can be imputed to Goulds.

The only New Hampshire contacts specifically attributable to Goulds that Double Check has identified were the presence of Goulds' employees at Environamics' training seminars in New Hampshire and its purchase of a New Hampshire subsidiary.  These minimal contacts are clearly not adequate to confer personal jurisdiction.  Double Check's allegation that Goulds' employees attended seminars does not relate sufficiently to the present litigation.  Although Double Check alleges misrepresentation in

12

its Count II, Double Check has not alleged that these misrepresentations were made by Goulds' employees in New Hampshire. Indeed, Double Check's only specific allegations of misrepresentations complain of statements made by Environamics, not by Goulds. Thus, this contact does not satisfy the requirement that the defendant's contacts relate to the litigation.

Furthermore, Goulds' ownership of a New Hampshire subsidiary alone cannot support jurisdiction. "[C]ourts have presumed the institutional independence of parent and subsidiary when determining whether jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). Personal jurisdiction has been based on the parent subsidiary relationship only when the parent exercises control "'greater than that normally associated with common ownership and directorship,'" or the "subsidiary is merely an empty shell." Id. at 466 (quoting Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1160 (5th Cir. 1983)). Double Check has not pointed to any evidence that the relationship between Goulds and Environamics went beyond a traditional parent subsidiary relationship.

Because Goulds' contacts do not support jurisdiction, any exercise of jurisdiction over the defendant would have to be

13

based upon Environamics' contacts.  Double Check argues that Goulds and Environamics were joint venturers or partners by estoppel.  It is well established that "jurisdiction over a partner confers jurisdiction over the partnership." Donatelli, 893 F.2d at 466.  It is less clear, however, that the converse is true.  Some courts have held that jurisdiction over a partnership does not confer jurisdiction over the individual partners.  See, e.g., Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990); Guy v. Layman, 932 F. Supp. 180, 182 (E.D. Ky. 1996).  Courts have based this holding on the proposition that "while each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners." Sher, 911 F.2d at 1366-76.  Under New Hampshire law, however, "each partner is an agent of the others as well as a principal." Dube v. Robinson, 92 N.H. 312, 313 (1943).  Thus, a partner's contacts can be imputed to the other partners.  This result does not offend due process since "by agreeing to enter into a partnership with others, a person should reasonably foresee being haled into court in those jurisdictions in which his partners conduct activities on the partnership's behalf." Donatelli, 893 F.2d at 467 n.5.  Thus, the court must determine whether the relationship between Goulds and Environamics can be construed to be a partnership.

14

Double Check first argues that Goulds and Environamics were engaged in a joint venture.[1]  Under New Hampshire law, a joint venture exists when two or more parties (1) "combine their property, money, efforts, skill, or knowledge in some common undertaking," (2) exercise mutual control over the subject matter of the joint venture, and (3) have a mutual intent to engage in a joint venture.  Fulginiti v. Barrego, No. 93-266-SD, slip op. at 4 (D.N.H. Dec. 15, 1993) (citing 46 AmJur.2d Joint Ventures § 11 (1969)); see also Stone & Michaud, 785 F. Supp. at 1069-70.  In Stone & Michaud, this court found that despite the rule that "the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner," RSA 304-A:7, an equity kicker agreement between a developer and bank that provided the bank would receive 65% of the developer's net profit was not sufficient evidence to transform the parties' relation-ship to that of partners of joint venturers.  785 F. Supp. at 1070.  The court found no partnership relationship existed because the plaintiff had failed to establish that the bank had the power of ultimate control as would make it a co-owner of the

_____

[1]"Parties in a joint venture stand in the same relationship to each other as partners in a partnership."  Stone & Michaud Ins. v. Bank Five, 785 F. Supp. 1065, 1069 (D.N.H. 1992) (quoting, Coe v. Watson, 126 N.H. 456, 458, 493 A.2d 490, 491 (1985) (quoting, Humiston v. Bushnell, 118 N.H. 759, 761, 394 A.2d 844, 845 (1978)).

business.  Id. at 1072.

In this case, Double Check has failed to make a prima facie showing that Goulds and Environamics' relationship was one where the two corporations were carrying on a single venture as co-owners of a business for profit.  Double check did not provide the court with any evidence  indicating that Goulds and Environamics had mutual control over the distribution of Environamics' pumps.  Double Check has also failed to meet its burden on the issue of intent.  Double Check has not pointed to a contract or other evidence that Goulds intended to engage in a joint venture with Environamics.

Secondly, Double Check argues that if this court does not find a joint ventureship, the relationship must be one of partnership by estoppel.  Goulds and Environamics may be considered a "partnership by estoppel" under RSA 304-A:16 if Environamics held its self out as a partner of Goulds and Double Check relied on this apparent partnership to its detriment.  See Johnson v. Shaines & McEachern, PA, 835 F. Supp. 685, 689 (D.N.H. 1993).  Partnership by estoppel is defined by RSA 304-A:16, which states:

> I.  When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made . . . .

16

This statute operates to estop individuals from denying their purported relationship to those relying upon their misrepresentations.  See Hilco Property Services, Inc. v. United States, 929 F. Supp. 526, 537 (D.N.H. 1996).

This court, however, finds that Double Check has not made out a prima facie case of partnership by estoppel.  Although Double Check alleges that it relied on Environamics representation that it was Goulds' partner, it has pointed to no evidence that Goulds consented to such representation.  To be liable as a partner by estoppel the individual must "represent himself, or consent to another representing him . . . as a partner."  RSA 304-A:16.  Double Check has failed to produce any evidence that Goulds either represented itself as Environamics' partner, or consented to Environamics' representation of their relationship as such.

Since Double Check has not made a prima facie showing of a partnership relationship between Goulds and Environamics, the court cannot impute Environamics' forum activities to Goulds.  The court does not find the minimum contacts necessary to support jurisdiction.  Therefore, the court cannot exercise personal jurisdiction over Goulds Pumps.

17

## Conclusion

For the reasons herein stated, the court herewith grants defendant's motion to dismiss for lack of personal jurisdiction as to Counts I through III of plaintiff's writ. Since no jurisdiction was found to exist by this court, the court need not reach defendant's second grounds for dismissal under 12(b)(6).

**SO ORDERED.**

_____
Shane Devine
Senior Judge

March 9, 1998

cc:  Francis L. Cramer III, Esquire
      George R. Moore, Esquire

18